851 So.2d 1255 (2003)
Walter A. GLOD, Jr., M.D.,
v.
W. Gregory BAKER, et al.
No. 02-988.
Court of Appeal of Louisiana, Third Circuit.
August 6, 2003.
*1258 George Allen Walsh, Alice F. Estill, Baton Rouge, LA, for Defendants Appellants, Vikki Lynn Baiers, W. Gregory Baker.
Nancy Scott Degan, New Orleans, LA, for Secondary Defendants Appellants, NKF I-DR Limited Partnership, BCM L.L.C., CBC International, Inc., Greg Baker Enterprises, CPCI Incorporated, Louis B. Viviano, Nawlins Kajun Food L.L.C., LAF Foods, Inc., V L B, Inc.
Roy Clifton Cheatwood, Kent Andrew Lambert, New Orleans, LA, for Secondary Defendants Appellants, Louis B. Viviano, CBC International, Inc., CPCI Incorporated, BCM L.L.C., Nawlins Kajun Food L.L.C., LAF Foods, Inc., V L B, Inc., NKF I DR Limited Partnership, Greg Baker Enterprises.
Reginald J. Ringuet, Lafayette, LA, for Secondary Defendants Appellants, LAF Foods, Inc., BCM L.L.C., NKF I-DR Limited Partnership, CPCI Incorporated, V L B, Inc., Louis B. Viviano, CBC International, Inc., Greg Baker Enterprises, Nawlins Kajun Food L.L.C.
Robert A. Kutcher, Patricia Diane Tunmer, Nicole Sophia Tygier, Metairie, LA, for Defendants Appellees, Copeland's of New Orleans, Inc., William A. Copeland III, Alvin C. Copeland, Jr.
John Bologna Krentel, New Orleans, LA, for Defendants Appellees, William A. Copeland III, Copeland's of New Orleans, Inc., Alvin C. Copeland, Jr.
Larry Lane Roy, Jennifer A. Wells, Lafayette, LA, for Defendants Appellees, Coregis Ins. Co., Chris Verret.
William H. Parker, III, Lafayette, LA, for Defendants Appellees, Ed Larry Sikes, Darnell, Sikes, Kolder, Frederick & Rainey.
Steven Gerald Durio, Jessica Watts Farmer, Lafayette, LA, for Defendants Appellees, Donald J. Baker, Kirby Pecot, Andrew B. Jameson, Max Luttgeharm, M.L. Godley, M.D.
Robert Louis Broussard, Lafayette, LA, for Defendant Appellee, Donald J. Baker.
Joseph C. Giglio, Jr., Lafayette, LA, for Plaintiff Appellee, Walter A. Glod, Jr., M.D.
Court composed of NED E. DOUCET, JR., Chief Judge, GLENN B. GREMILLION, and ELIZABETH A. PICKETT, Judges.
DOUCET, Chief Judge.
These eight consolidated appeals arise from commercial litigation that brought together nearly two dozen different litigants and a complex collage of claims, cross claims, and third-party claims. The suits stem from the termination of two franchise agreements by an arbitration award entered on September 30, 1997. The franchisor was Copeland's of New Orleans (CNO). The owners of the franchises terminated by the arbitration award (the franchisees) were two limited liability companies, BCM, L.L.C. (BCM) and Nawlins Kajun Foods, L.L.C. (Nawlins). The terminated franchise agreements were for *1259 the development and operation of Copeland's of New Orleans restaurants in Lafayette, Louisiana, and Orlando, Florida. A number of investors claimed they lost money, based on a number of theories, because of the termination of the franchises, and these suits, cross claims, and third-party claims arise from those alleged losses. On appeal are five separate judgments rendered in these actions. All judgments sustain exceptions of no right of action; one, in addition, grants a summary judgment. The exceptions and summary judgment dismissed all claims for losses except those asserted by the two limited liability companies, BCM and Nawlins (often referred to herein as the LLCs). For reasons which follow, we affirm.

FACTS
In 1994, Alvin C. Copeland, William A. Copeland, and Copeland's of New Orleans, Inc. (the Copelands) entered into a written franchise agreement with W. Gregory Baker (Baker), of Rapides Parish, to open a Copeland's restaurant in Lafayette. Baker initially assigned the franchise to BCM, Inc., a corporation in which he and Vikki Lynn Baiers (Baiers) were the sole stockholders. This assignment had written CNO approval, a requirement under the franchise agreement. Baker and Baiers then hired an accountant, Ed Larry Sikes, and an attorney, Chris A. Verret, both of Lafayette Parish, to work with the franchise. In November 1994, on the advice of their accountant and their attorney, Baker and Baiers created a Louisiana limited liability company, BCM, into which the franchise was transferred. This transfer also had the written approval of CNO.
To get the Lafayette restaurant up and running, BCM needed investors. Baker approached Louis Viviano, of St. Landry Parish, who bought a 30% interest in BCM for $200,000. Viviano then transferred that interest to a wholly owned corporation, LAF Foods, Inc. (LAF), which he had created for the purpose of holding that franchise interest. Baker also obtained from Dr. Walter A. Glod, M.D., of Lafayette Parish, an investment of $100,000 in exchange for a 15% interest. At this point, the ownership of the limited liability company, BCM, was 30% in LAF Foods, Inc., 27.5% in Baker, 27.5% in Baiers, and 15% in Glod. The Copeland's restaurant in Lafayette was built and it opened for business in September 1995.
On January 1, 1996, Baker transferred his interest in BCM into a wholly owned new corporation, Greg Baker Enterprises (GBE), and Baiers transferred her interest into her newly created corporation, VLB, Inc. (VLB). In addition, Viviano transferred his interest held by LAF to CBC International, Inc. (CBC), a sub-chapter S corporation wholly owned by him. As a result of these transfers, the ownership of the limited liability company that held the Lafayette franchise was: GBE, 27.5%; VLB, 27.5%; CBC, 30%; and Glod, 15%.
The Lafayette franchise was a success. Attention was then turned to opening another restaurant, this one in Orlando. For this purpose another limited liability company, Nawlins, had already been created. On or about January 5, 1996, Viviano's sub-chapter S corporation, CBC, invested $75,000 and acquired a one-third interest in Nawlins. Baker and Baiers were the members of Nawlins having the remaining two-thirds interest. They each transferred their respective interests to their corporations, GBE and VLB.
Baker and Baiers created NKF I-Drive Limited Partnership (I-Drive), a Florida limited partnership, to be the operating entity for the Orlando store. A Louisiana corporation, NKF, Inc. (NKF), owned in equal shares by Viviano, Baker and Baiers, was created to be I-Drive's general partner. NKF owned 10% of I-Drive. There were two classes of partners in I-Drive. *1260 Class B partners consisted of Nawlins and CPCI, Incorporated (CPCI), another entity owned by Viviano. Class A partners consisted of the individuals Donald Baker, Dr. Lloyd Godley, Max Luttgenharm, Donald Jameson and Kirby Pecot: these individuals were the limited partners, whose investments also contributed to the efforts on behalf of the Orlando store.
Viviano's entity, CBC, loaned $450,000 for the purchase of furniture, fixtures, and equipment for the Orlando store. To secure this loan, CBC got a mortgage on the purchases, and it also required, as collateral, stock pledges from Baker and Baiers. Baker pledged his stock in GBE, and Baiers pledged a thousand shares of her stock in VLB.
Nawlins acquired a franchise from CNO and the Orlando restaurant opened for business. This store was not a success. When it needed money, Viviano, through his entities CBC and CPCI, eventually infused $1,050,000 into the Orlando store. There were loans made by CBC that were later subsumed by loans made by CPCI. As a part of the complicated recapitalization and restructuring process that these loans entailed, Baker sold to Viviano all of his stock in GBE for $225,000. It was through GBE that Baker held his ownership in the LLCs. Baker also acquired half of Baiers' interest in VLB. Later, most of the shares of VLB were purchased by CPCI at a judicial sale. The money changing hands in this process went to I-Drive, but it was all for the benefit of Nawlins.
All of these financial transactions and structuring resulted in numerous conveyancing and encumbrancing of interests in the franchises owned by the LLCs. Eventually, Viviano had the majority ownership or control of both BCM and Nawlins, the two franchisee LLCs. His ownership or control became 85% of BCM and 87.5% of Nawlins.
We have named the corporations, partnerships, and LLCs involved in these multiple and complicated transactions. The individuals involved were Glod, Gregory Baker, Baiers, the two Copelands, Viviano, the five limited partners (Donald Baker, Godley, Luttgenharm, Jameson, and Pecot), Ed Larry Sikes, the accountant, and Chris A. Verret, the attorney.
The franchise agreements contained language prohibiting the conveyance or encumbrance of any interest in the agreement, the restaurant, or the franchisee without the prior written consent of the franchisor. In 1997, learning of these transfers and encumbrancing of interests, and knowing that its consent was last obtained nearly three years earlier in 1994, when the Lafayette franchise was conveyed to BCM, the Copelands instituted arbitration proceedings seeking termination of both franchise agreements. An arbitration award terminated the franchise agreements on September 30, 1997.
In a published opinion in a writ application in one of these consolidated cases, Glod v. Baker, 99-0872 (La.App. 3 Cir. 12/8/99), 755 So.2d 910, we agreed with the trial judge that the effect of the arbitration award was to terminate the franchise agreements; it did not affect the pending claims that had been judicially asserted by various parties seeking the return of their investments and lost profits connected to the Copeland's restaurants in Lafayette and Orlando. Those pending claims, described below, proceeded on through discovery toward trial.

THE CLAIMS
The first claim was a suit brought by Dr. Glod. He was a $100,000 original investor in the Lafayette franchise ultimately held by BCM. He sought to recover his investment and lost profits. The Defendants in his action were Baker (unless *1261 otherwise specified, "Baker" will always mean W. Gregory Baker), Baiers, Viviano, and the entities then held by these parties which were involved in the Lafayette franchise, i.e. GBE, VLB, LAF, and CBC. He also sued the attorney, Chris Verret. Dr. Glod later amended his suit to add as Defendants CNO, Alvin Copeland, William Copeland, the two LLCs, I-Drive, NKF, Sikes and his accounting firm (Darnall, Sikes & Frederick), and CPCI.
Viviano, and the various non-franchisee entities owned or controlled by him (we will sometimes refer to them as the Viviano Entities), then filed a cross claim against CNO and the individual Copelands, alleging that the Copeland Defendants had acted in concert with Baker and Baiers to defraud investors. In particular, they alleged that the Cross Defendants had a secret agreement with Baker to lure investors into franchise agreements, develop the restaurants, and then "flip" control of the restaurants back to Copeland's of New Orleans. They alleged that this was done by failing to disclose that the franchise agreements contained an arbitration provision that allowed termination if there were transfers of interests not approved by the franchisor. In amending pleadings Viviano, BCM, Nawlins, LAF, CBC, and I-Drive expanded their cross claims to seek recovery against Baker, Baiers, and Verret, as well as against CNO and the two Copeland individuals, under the theories of unfair trade practices, securities fraud, tortious misrepresentation, detrimental reliance, intentional interference with contractual relations, conversion, and abuse of process. (The conversion and abuse of process claims concerned events that took place after the termination of the franchises. The cross claimants announced at one of the many hearings conducted at the trial level, that the conversion and abuse of process claims would not be pursued.)
The cross claims of Viviano and his entities against Baker and Baiers were that, at the urging of Baker and/or Baiers, they repeatedly loaned the Orlando restaurant money to keep it afloat; and that, ultimately, Viviano agreed to purchase for $225,000, all of the outstanding shares in GBE, Baker's corporation, through which Baker held his ownership interests in BCM and Nawlins. The shares of Baiers' corporation, VLB, that had been pledged to CBC and CPCI, were subsequently purchased by CPCI. Thus, were they allegedly damaged by Baker and Baiers.
Viviano and his entities also claimed damages against Verret for the reason that they were harmed by his attorney errors and omissions. While they acknowledge that the franchise holders, BCM and Nawlins, had rights of action against Verret, they claimed that they were additionally harmed. They claimed entitlement to recover from him the funds they expended by investments or loans as a result of Verret's negligence. This negligence, they argued, was the failure to advise them that those very investments could result in the termination of the franchise agreements and the closure of the restaurants.
Baker and Baiers filed a cross claim against Verret for damages for legal malpractice. They also filed cross claims on appeal against Viviano individually, and against the entities BCM, LAF, GBE, CBC, VLB, Nawlins, I-Drive, CPCI, and NKF. In the same pleading they added a third-party claim against Sikes and his accounting firm.
Their claims against Sikes and Verret were essentially the same: they argued that these two professionals were at all times their personal attorney and their personal accountant, as well as the attorney and accountant for the two LLCs. They attributed their losses to the failure *1262 of the professionals to understand and advise them that violations of the franchise agreements could result in cancellation of the franchises. They urged that their personal rights to recover were as viable as those of the LLCs.
Although the claim of Baker and Baiers against Viviano included his entities, and the exception was granted in favor of all those Cross-Defendants, the actual allegations were asserted only against Viviano. Baker and Baiers alleged that Viviano, as the managing member of the two LLCs, violated his fiduciary responsibilities and the Unfair Trade Practices and Consumer Protection Laws. Alleging that they still owned unpledged shares in VLB, which in turn owned an interest in the two LLCs, they claimed the right to bring a derivative action, and based their right of action on this theory as well.
Baker additionally claimed that he was an owner, along with Nawlins, of the Orlando franchise. As an owner of the franchise, he claimed a right of action.
In another of these several claims consolidated on appeal, the limited partners in I-Drive sued Sikes and his accounting firm and Verret. The claims of these persons were dismissed by the trial judge on an exception of no right of action, and no appeal was taken from that dismissal. The claim of Dr. Glod, the initial plaintiff, seeking recovery of his investment and his lost profits, was also dismissed on an exception of no right of action, and no appeal has been taken from that dismissal. With the exception of the two LLCs, BCM and Nawlins, the demands of all other claimants were dismissed on exceptions of no right of action (and on a motion for summary judgment as to one of them), and these dismissed claimants have appealed. We will now identify each of the five judgments on appeal.

JUDGMENTS ON APPEAL
1. Judgment signed August 1, 2001, maintaining an exception of no right of action and motion for summary judgment filed by Sikes and his accounting firm as to the claims of Baker and Baiers, dismissing those claims.
2. Judgment dated August 9, 2001, maintaining an exception of no right of action filed by Viviano, GBE, VLB, LAF, CBC, CPCI, BCM, Nawlins, I-Drive, and NFK as to the claims of Baker and Baiers, dismissing those claims.
3. Judgment dated August 30, 2001, maintaining an exception of no right of action filed by CNO and the two individual Copelands as to the claims of Viviano, GBE, VLB, LAF, CBC, CPCI, I-Drive, and NKF, dismissing those claims.
4. Judgment dated January 10, 2002, maintaining an exception of no right of action filed by Verret as to the claims of Viviano, GBE, VLB, LAF, CBC, CPCI, BCM, Nawlins, and I-Drive, dismissing all those claims except those of BCM and Nawlins. The judgment declares that "[t]he claims of BCM, L.L.C. and Nawlins Kajun Foods, L.L.C. remain."
5. Judgment dated January 24, 2002, maintaining an exception of no right of action filed by Verret as to the claims of Baker and Baiers, dismissing those claims.

IDENTIFICATION OF APPELLANTS AND THEIR ASSIGNMENTS OF ERRORS
Baker and Baiers appeal the judgments listed as numbers 1, 2 and 5 above. The error they assign to the judgment granting the exception of no right of action and the summary judgment in favor of Sikes and his accounting firm is that the trial judge erred in holding that Baker and Baiers stood in the same position as the other investors, and that the trial judge erred in *1263 finding that only the two limited liability companies had rights of recovery against Sikes and his accounting firm. The essence of their argument as to this assignment is that they hired Sikes and his CPA firm to represent them individually as their personal accountant as the franchise holders, and that, therefore, their rights are separate and distinct from the rights of the two LLCs.
Their second assignment of error is that the trial judge made the same mistake in his ruling on Verret's exception of no right of action. Their argument is that they hired Verret to give them personal legal advice initially, and that their damages are separate and distinct from those of the two LLCs because initially he was their personal attorney and they believed that he continued to be their attorney after the LLCs were formed.
Their third assignment pertains to the judgment maintaining the exception of no right of action filed by Viviano, GBE, LAF, CBC, CPCI, BCM, Nawlins, I-Drive, and NKF. Again, they argue that the error was in regarding them as standing in the same position as the two LLCs, BCM and Nawlins. Further, they argue that they are still shareholders in VLB, which owns an interest in both of the two LLCs; and that as shareholders, they have the right to bring a derivative action against the managing member of the two LLCs, when the LLCs fail to bring the action on behalf of themselves.
Viviano and his entities also appeal the two judgments dismissing their demands. The first dismissal was at the behest of CNO and the two individual Copelands. As to this ruling, these cross claimants, referring to some of themselves as "non-franchisee cross-plaintiffs" (Viviano, LAF, CBC, and CPCI), argue that they have a right of action against the Copelands for detrimental reliance. These four also claim the right to pursue the Copelands for tortious misrepresentation and securities laws violations. Their arguments are that the non-franchisee Cross Plaintiffs made investments and loaned funds based on material omissions and misrepresentations, and that these amounted likewise to securities laws violations because promissory notes were involved. Additionally, CBC claims a right of action against the Copelands to recover funds invested and/or loaned in connection with the franchisee operations, and CPCI claims a right of action against these same Defendants in connection with loans made to I-Drive. They believe it was error for the trial judge not to recognize their separate rights.
Finally, Viviano and some of his entities urge that the trial court erred in failing to recognize that some of them have rights to assert against Verret. Conceding that the two LLCs have a right to assert a claim against Verret for the recovery of lost profits, they argue that CPCI has the separate right to pursue Verret for its damages, CBC has the right to separately pursue Verret for loans it made to Nawlins, Viviano/LAF have a right to recover amounts paid for outstanding shares of GBE and loans to I-Drive, and Viviano/LAF, CBC, VLB and GBE have rights of action to recover the amounts paid for their interests in the Lafayette and Orlando franchises.

THE TRIAL COURT'S REASONS FOR JUDGMENT
The trial judge reasoned that BCM and Nawlins, the two limited liability companies, were the only parties who had a right to sue for any of the pleaded damages for termination of the two Copeland's franchises. In reasons for judgment written after one of his rulings, after discussing the results of his research and the jurisprudence, the trial judge wrote:

*1264 The above cases are all similar to the present case in that they involve harm allegedly done to closely held corporations, partnerships or limited liability companies owned by a very few people, who are also severely personally damaged as a result of the wrongs done to their entities. The cases show that these wrongs can include breach of contract, conspiracy, interference with contract, violation of state or federal laws, breach of fiduciary duties, and all manner of inconvenience, embarrassment and general pain and suffering.
Indirect personal loss is a danger arising from the very nature of such business enterprises. When the entity does well, then a very few profit greatly from it; and when it goes badly for the entity, those same few suffer greatly. The modern entrepreneur will trade off the ability to act in his individual capacity for the benefits and protection enjoyed by incorporation or the formation of a limited liability company. While a corporation or limited liability company can effectively insulate the entrepreneur's personal wealth and holdings from suit or seizure from wrongful acts of the entity and provide tax shelters or benefits, the corollary is that the right to sue for wrongs done to the business entity is not a personal, individual right of its owners or members. It belongs to the entity, which enjoys the status of a separate juridical person. And if the wrong to the entity is righted, then the indirect wrong to its owners and members is righted as well.

LAW
An action can only be brought by a person having a real and actual interest which he asserts. La.Code Civ.P. art. 681. The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com'n, 94-2015 (La.11/30/94), 646 So.2d 885. An appellate court can raise the exception of no right of action on its own motion. La. Code Civ.P. art. 927; Boyd v. Int'l Paper Co., 594 So.2d 961 (La.App. 3 Cir.1992). Although exceptions of no right of action were filed, heard, and decided in each of the cases before us on appeal, we have the independent authority to consider the exceptions on our own motion and, accordingly, we can and will review the entire record to determine whether the claimants before us have a right of action. Ridgedell v. Succession of Kuyrkendall, 98-1224 (La.App. 1 Cir. 5/19/99), 740 So.2d 173.
The rule in Louisiana is that a shareholder has no separate or individual right of action against third persons, including directors and officers of a corporation, for wrongs committed against or causing damage to the corporation. In the early case of Dawkins v. Mitchell, 149 La. 1038, 90 So. 396 (1922), the supreme court held that shareholders of stock in a failed bank could not sue the directors based on their negligence and maladministration for the recovery of the shareholder's loss. The court reasoned that the right belonged to the bank and not to the shareholder because the damages suffered to the stock was an asset of the bank, not an asset of the shareholder. Similarly, in Orlando v. Nix, 171 La. 176, 129 So. 810 (1930), a plaintiff sought to recover his individual loss of thirty shares in a homestead association, suing the defendant members of the homestead's board of directors on the allegation that they conspired to defraud the association of its assets. Again, the court reasoned that a homestead association like any corporation owns its assets and no individual stockholder had a property right in those assets. The right to recover for a *1265 loss occasioned by mismanagement or fraud on the part of its officials was deemed an asset of a corporation not of the stockholders. The court recognized that "in extreme cases," a stockholder could sue for damages done a corporation, but even then the suit was on behalf of the corporation and only the corporation was entitled to the amount recovered.
The rule that a right of action for mismanagement or fraud that causes loss to the corporation is an asset of the corporation and may only be asserted secondarily by a shareholder through a shareholder's derivative suit has been followed consistently in this circuit. It was followed in Beyer v. F & R Oilfield Contractors, Inc., 407 So.2d 15 (La.App. 3 Cir. 1981), writ denied, 411 So.2d 451 (La. 1982). In that case, individual shareholders sued officers and directors of the corporation for damages based on alleged illegal and ultra vires acts which improperly raised the expenses of the corporation. While recognizing that La.R.S. 12:91 extended the officers' and directors' fiduciary relationship to shareholders, the court held that it did not confer a direct right of action on the shareholders in that case, because the losses sued for were losses sustained solely by the corporation and the only remedy the shareholders had was through a shareholder's derivative suit. See also Ware & Wingate Co., Inc. v. Wingate, 495 So.2d 1334 (La.App. 3 Cir.1986), and Moity v. Acadian Woodworks, Inc., 435 So.2d 597 (La.App. 3 Cir.1983). The rule has been adhered to in other circuits as well. See Palowsky v. Premier Bancorp, Inc. 597 So.2d 543 (La.App. 1 Cir. 1992); Yarbrough v. Federal Land Bank, 31,831 (La.App. 2 Cir. 5/5/99), 732 So.2d 1244; Dennis v. Copelin, 94-2002 (La.App. 4 Cir. 2/1/96), 669 So.2d 556, writ denied, 96-1012 (La.6/21/96), 675 So.2d 1079; Maestri v. Destrehan Veterinary Hosp., Inc., 94-1030 (La.App. 5 Cir. 3/28/95), 653 So.2d 1241, writ denied, 95-1534 (La.9/29/95), 660 So.2d 879.
The right of action lies only with the corporation even though one person is the sole owner of the stock. "[T]he corporation and its stockholders are not one and the same even though the number of stockholders be reduced to one person." Mente & Company v. Louisiana State Rice Milling Co., 176 La. 476, 146 So. 28 (1933). Shareholders cannot sue in their own name to recover damages to corporate property. Id. A Louisiana limited liability company is a separate legal entity from its members. Metro Riverboat Associates, Inc. v. Bally's Louisiana Inc., 99-0983 (La.App. 4 Cir. 1/24/01), 779 So.2d 122, writ denied, 01-1088 (La.6/1/01), 793 So.2d 199.
A shareholder can have a right of action for a personal loss if the cause of action is based on breach of a contract between the shareholder and the corporation and its directors. In Bordelon v. Cochrane, 533 So.2d 82 (La.App. 3 Cir. 1988), writ denied, 536 So.2d 1255 (La. 1989), we held that a shareholder had both a cause and right of action to assert a claim against the corporation and its officers for breach of a shareholders agreement entered into before he became a shareholder. Implicit in the opinion is that the corporation itself suffered no loss, only the shareholder. Another example is the case of Wilson v. H.J. Wilson Co., Inc., 430 So.2d 1227 (La.App. 1 Cir.), writ denied, 437 So.2d 1166 (La.1983). In that case, a shareholder in a family corporation claimed a breach of fiduciary duty because of an allegedly fraudulent transfer to the corporation's principal stockholder of shares that actually belonged to the plaintiff. In his suit, the plaintiff sought recovery of the shares or the value thereof. The breach of fiduciary duty caused a direct loss to the shareholder. It was the *1266 shareholder, but not the corporation, that suffered a loss, and the court recognized that the shareholder had the right to sue individually. The reasoning of Wilson was followed in Succession of Davis, 463 So.2d 723 (La.App. 4 Cir.1985). There the shareholder sued the succession of a corporate president, alleging fraud and misrepresentation in connection with a stock redemption agreement. The court recognized the suit as a personal action for a breach of contract or fiduciary obligation under La.R.S. 12:91; the contract on which the personal right of action was founded was the redemption agreement. Once more, the corporation suffered no loss.
The rule is the same in shareholder suits against other third parties who are not related to the corporation. In Afeman v. Insurance Co. of North America, 307 So.2d 399 (La.App. 4 Cir.1975), the plaintiff was the president and 90% owner of Design Kitchens, Inc. While on a job for Design Kitchens, he suffered personal injuries in a fall due to the defendant's negligence. He obtained an award for his personal pain and suffering and medical expenses, and also $7,500 for loss of income. The income loss figure was supported by the testimony of his corporate accountant as losses of Design Kitchens, which the plaintiff asserted belonged to him because he was president and 90% owner of the corporation. The court reversed the loss of income award because only the corporation, not the plaintiff, had a right of action to recover that loss. Similarly, in Mahfouz v. Ogden, 380 So.2d 646 (La.App. 1 Cir.1979), the plaintiff, sole owner of the corporation, sued for damages to the corporation for wrongful sequestration. The court found the plaintiff had no right of action, stating that a person who conducted business in corporate form and reaped the benefits of incorporation could not sue individually for damages incurred by the corporation. Also, in Richard v. Morgan, 433 So.2d 263 (La. App. 1 Cir.), writ denied, 438 So.2d 1108 (La.1983), the principal employee and shareholder of an incorporated business, who was injured by the fault of another, was not entitled to recover against the tortfeasor for the diminished value of the business due to the employee's injuries.
If the tort-based loss belongs to the shareholder, he has a right to sue for its recovery, even though the corporation has also suffered damages caused by the same harm. In Hinchman v. Oubre, 445 So.2d 1313 (La.App. 4 Cir.1984), Hinchman and his wholly owned corporation, HECMAC, sued a judgment creditor of the corporation for abuse of process and conspiracy to defraud based on a wrongful seizure of movable property. They claimed that by the time they got the writ of seizure dissolved, the property had all disappeared. Hinchman personally demanded damages for substantial embarrassment, loss of income, loss of use of movable property, loss of business contacts, loss of security and privacy of business records to competitors, gross harassment and inconvenience, and considerable pain, suffering and mental anguish. Hinchman alleged that some of the lost property belonged to him individually rather than the corporation. The defendants argued that Hinchman's claims for damages were damages suffered by the corporation, HECMAC, and, therefore, he had no right of action personally. The court responded:
This contention is partly correct. The debts and obligations due to a corporation are not due to the individuals who compose its membership. If a corporation has sustained a loss then only that corporation can sue to recover it. A person who conducts business in corporate form and reaps the benefits of incorporation cannot sue individually for damages incurred by the corporation.

*1267 Marshall Hinchman's claims for damages for loss of income, loss of business contacts, and loss of security and privacy of business records are damages directly suffered by the corporation. Any such losses he has suffered are indirect, as a stockholder. Accordingly, he may not recover for these damages himself.
However, regarding his claims for loss of movable property and loss of use of movable property, and resulting mental anguish and inconvenience, certainly he has a right to recover those losses as to any personal property he had on the premises, if he is able to prove any of the seized property belonged to him individually rather than to the corporation.

Id. at 1317 (citations omitted.).
In L & L Industries, Inc. v. Progressive National Bank, 535 So.2d 1156 (La.App. 2d Cir.1988), there were three plaintiffs. They were the corporation, L & L Industries, Inc., and its sole shareholders, Leslie Lott and Linda Lott. They sued the bank and its officers and directors alleging that the bank "entered into a course of action calculated to force petitioner, L & L Industries, Inc., into a position whereby said company would either be foreclosed upon by said bank or forced into a financial posture requiring complete liquidation, resulting in ownership of the corporate real estate and other property by the bank and/or certain of its officers or directors." Id. at 1157. The petition also alleged that the actions of the bank officers and directors caused both Mr. and Mrs. Lott, the sole shareholders of L & L, to suffer health problems. L & L claimed damages of $2,000,000, and Mr. and Mrs. Lott claimed damages of $1,000,000 each. The specific allegations of bank misconduct set forth in the petition were failing to promptly credit wire transfers from corresponding banks, failing to timely honor letters of credit, forcing L & L to seek substitute financing, not loaning L & L money needed to complete the purchase of a competing business on very favorable terms, and obtaining an assignment of L & L's accounts receivable from Leslie Lott, who was not authorized to execute the same.
Affirming the dismissal of the claims of the individual shareholders, the court said:
The Lotts' petition prayed for damages for mental anguish and physical suffering that resulted from the defendants' conduct. However, the wrongful acts alleged in plaintiffs' petition were all directed towards L & L, not Mr. and Mrs. Lott as individuals. A person cannot recover in tort for mental anguish resulting from injuries suffered by another. Further, if a corporation has sustained a loss then only that corporation can sue to recover it. A person who conducts business in corporate form and reaps the benefit of incorporation cannot sue individually for damages incurred by the corporation. Here, the only wrongful acts alleged were those against L & L. The Lotts cannot recover for mental anguish and attendant physical suffering resulting from any alleged wrongful acts against the corporation of which they are the shareholders and officers.

Id. at 1158 (citations omitted.).
The trial court found, and we agree, that Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 95-1630 (La.App. 4 Cir. 2/12/97), 689 So.2d 650, writ denied, 97-0659 (La.4/25/97), 692 So.2d 1090, is a case remarkably similar in its issues to the matter presently before us. There, Joseph P. Conte, an individual, the Joseph P. Conte Family Trust, and Conte Toyota, Inc., Conte's corporation, all sued several Toyota corporate entities and individuals for breach of contract, interference with contract, conspiracy, breach of the Louisiana Motor Vehicle Act, and violations of the Louisiana Unfair Trade Practices Act and Louisiana antitrust laws. Their petition *1268 alleged that the Toyota entities engaged in an unlawful conspiratorial attempt to put Conte Toyota out of business and terminate its franchise.
The court affirmed the finding that neither Joseph P. Conte nor the Joseph P. Conte Family Trust had a right of action, saying:
All claims asserted by Conte and the Family Trust seek damages allegedly incurred by Conte Toyota. As shareholders of Conte Toyota, Conte and the Family Trust have no right of action independent of Conte Toyota. Conte Toyota, a named Plaintiff in this action, is the proper party to pursue this lawsuit. Conte, as guarantor of Conte Toyota's corporate debts, has not incurred damages separate and independent of the damages allegedly suffered by Conte Toyota.
Shareholders and officers of a corporation, such as Conte and the Family Trust, do not have a personal right to sue in Louisiana to recover for acts committed against, or causing damage to the corporation. Bolanos v. Madary, 609 So.2d 972, 977 (La.App. 4th Cir.1992), writ denied, 615 So.2d 339 (La.1993). A guarantor of corporate obligations, such as Conte, has no standing to sue for injury to the corporation. See, Lakeside National Bank v. Vinson Bros., 607 So.2d 1009, 1011 (La.App. 3d Cir.1992); Eximco, Inc. v. Trane Co., 737 F.2d 505, 511 (5th Cir.1984). Likewise, such a guarantor has no standing to sue individually for personal losses incurred as guarantor, even in the presence of breach of contract, fraud, conspiracy, or other wrongful misconduct. Nowling v. Aero Services International, Inc., 752 F.Supp. 1304, 1316 (E.D.La.1990); Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir.1981).
In Eximco v. Trane Co., supra, 737 F.2d at 511, the federal court, applying Louisiana law, addressed a factual situation analogous to the case at bar. There, individual plaintiffs were the shareholders of a closely held corporation that was to obtain financing from the defendant. In reliance on the defendant's statements, the individual plaintiffs allegedly resigned their jobs, personally rented office and warehouse space for the new business and personally guaranteed the corporation's debts. Dismissing plaintiffs' claims on summary judgment for no right of action, the court held that corporate shareholders who purchase real estate for the corporation's benefit, have no right of action separate from the corporation against third-parties.
Conte and the Family Trust are sole stockholders of Conte Toyota. Additionally, Conte acted as an officer of the corporation and guarantor of Conte Toyota's debts. Accordingly, Conte and the Family Trust's damages are purely derivative of Conte Toyota's claims.

Id. at 653-54.

OPINION
We will discuss each of the five appealed judgments separately and in the order we earlier listed them. Before doing so, it is necessary to repeat and put into context certain matters common to all these cases.
According to all the pleadings and the evidence offered in connection with the exceptions of no right of action, as uniformly construed in the arguments of counsel, damages would never have been suffered by any of the claimants if the franchises had not been terminated. And, the franchises would not have been terminated had there not been unapproved transfers of interest, in the sense of conveyances and encumbrances of interests. However, none of these harmsunapproved transfers of interests-took place before *1269 the LLCs became the actual or anticipated owners of the franchises. When BCM acquired ownership of its franchise, it did so with the written approval of CNO, as required by the franchise agreement. When Nawlins acquired its franchise, it was a direct acquisition from CNO, and its ownership makeup at the time of acquisition was thereby approved. While some transfers of interests took place before the formal acquisition of the franchise by Nawlins, all the transfers were after CNO accepted a purchase deposit on Nawlins' behalf, and while Nawlins was doing business as the de facto franchisee of the Orlando store.
The case of Roger Boc, L.L.C. v. Weigel, 99-570 (La.App. 3 Cir.11/3/99), 744 So.2d 731, writ not considered, 00-176 (La.3/17/00), 756 So.2d 316, is distinguishable from the facts of the present case. In Roger Boc, the individual purchasers of property were permitted to maintain an action against the vendors for fraud, redhibition, and negligent misrepresentation even though they had subsequently transferred the property to a limited liability company. This court found that the purchasers were the only parties directly damaged by the wrong, and that they were entitled to bring an action against the party who had committed the wrong. The distinction is, in Roger Boc, this court found the limited liability company suffered no damages; only the individual purchasers of the property suffered damages. In the present case, the damages resulting from the loss of the franchises belonged entirely to the LLCs. The wrongs, and damage, was done to the LLCs.
We turn now to the individual judgments.

1.
Judgment signed August 1, 2001, maintaining an exception of no right of action and motion for summary judgment filed by Sikes and his accounting firm as to the claims of Baker and Baiers, dismissing those claims.
In the language of their assignment of error as to this judgment, Baker and Baiers say that their rights of action against Sikes and his firm are "separate and distinct [from the rights of the two LLCs, and] came into existence upon the retention of Mr. Sikes and his firm as their personal accountant as the franchise holders." In the third-party demand by which they asserted this claim, Baker and Baiers alleged that they lost "hundreds of thousands of dollars in investments" caused by the negligence of Sikes. This negligence, directed at Sikes' failure to professionally deal with the restrictions on transfers of interests in the franchises, was based entirely on the premise that Baker and Baiers were Sikes' clients, and that he owed them as clients the duty to protect their personal financial interests against loss caused by the transfers of interests in the franchises and consequent loss of the franchises themselves. They claimed as damages investment capital and lost revenue, future income from franchise operations, mental pain and anguish, attorney fees, and lost wages.
The dismissal of these claims was done by a summary judgment in favor of Sikes and his firm, and on a ruling that Baker and Baiers had no right of action against these Third-Party Defendants. Both rulings were correct.
A summary judgment is a finding that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). We review summary judgments de novo. Menard v. City of Lafayette, 01-004 (La.App. 3 Cir. 5/23/01), 786 So.2d 354. Whether Sikes was their personal accountant as well as the accountant for the LLCs was a question of fact. The motion for summary judgment was supported *1270 by an affidavit by Sikes, stating that he was a C.P.A. and a shareholder in his accounting firm, and that he was the accountant in charge of the firm's accounts with the entities operating the CNO franchises involved in this lawsuit. The affidavit further stated that he and his firm accepted engagements relative to the two restaurants on behalf of BCM and Nawlins. It stated that all services rendered were billed to the entities and the bills that were paid were paid by the entities. It stated that neither he nor his firm ever rendered any services to Baker and Baiers individually, and never billed either of them individually. Attached to the affidavit in support of it were numerous invoices made out to one or the other of the LLCs, "c/o Vikki Baiers" or "c/o Greg Baker," covering a time period of nearly three years. These attachments show dozens of monthly and yearly financial statements, tax returns, and audits for the entities, but nothing for Baker and Baiers as individuals. The attachments were represented as being all of the billings in connection with the franchises.
In opposition to these filings Baker and Baiers offered nothing except their subjective assertions that Sikes was their personal accountant. They offered no evidence, not even their own assertions, that he did such things as their personal income tax returns or financial statements for them, or that they were ever personally billed for any accounting service. They offered no evidence to show that they personally paid a single accounting expense.
We recognize that these Third-Party Plaintiffs have alleged, and may be able to prove, that they suffered individual personal losses of their initial investments and later liability incurred in keeping the franchises going. But their personal losses cannot be distinguished from the losses suffered by the franchisees, the LLCs. Under our summary judgment code articles, it was incumbent on Baker and Baiers to show that, not only was there a special duty owed them by Sikes because of a professional relationship between them, but that they also suffered damages from the violation of that duty that had not been suffered by the LLCs. Their summary judgment evidence failed completely to establish either the duty or any separate damage. Reviewing the summary judgment evidence de novo, we agree that summary judgment was properly granted. Therefore, the only rights against Sikes and his firm that may exist with respect to his alleged negligence leading to the loss of the franchises are rights belonging to the LLCs which the franchisees alone have the right to pursue.
The exception of no right of action was properly maintained for the same reasons as explained in our consideration of the summary judgment. Additionally, the entire consolidated record, and not merely the summary judgment evidence, supports this ruling. The pleadings of all parties as to the basic transactional facts raise no dispute. We have outlined those facts above and they were also essentially covered in the first appeal, Glod, 755 So.2d 910. None of the parties have taken issue with our recitation of the basic transactional facts in the first appeal. After remand, of course, additional pleadings were filed and considerable discovery took place. Some of the discovery, in the form of excerpts from depositions, is in the record. As we earlier mentioned in our discussion of the law applicable to these consolidated appeals, it is appropriate that we consider the entire record in our independent determination of whether these claimants have rights of action. Baker and Baiers argue in their briefs that we should consider the entire record, and we have. It leads us to the same conclusion with respect to the exceptions of no right of action as we have *1271 reached with respect to the motion for summary judgment.

2.
Judgment dated August 9, 2001, maintaining an exception of no right of action filed by Viviano, GBE, VLB, LAF, CBC, CPCI, BCM, Nawlins, I-Drive, and NKF as to the claims of Baker and Baiers, dismissing those claims.
Baker and Baiers filed cross-claims against Viviano, individually, and against the entities GBE, VLB, LAF, CBC, CPCI, BCM, Nawlins, I-Drive, and NKF. However, their pleadings asserted claims only against Viviano personally. The pleadings made no factual allegations at all attempting to establish liability on the part of the entities.
Their allegations were that Viviano, either as an officer, director, or shareholder, mismanaged the affairs of the two LLCs, and breached the fiduciary obligation owed by him to the LLCs. The way he did this, according to their cross-pleadings, was "as a lender through indirect actions of corporations controlled by Viviano." He "failed to comply with the terms and conditions of the Copeland's Franchise Agreement[s] with Copeland's of New Orleans by providing all of the necessary background and financial information to allow approval of the transfers of interests in the entities owning the right to operate the franchise restaurant[s]." This action allegedly "caused a termination of the franchise agreement[s] and damages ... to petitioners."
Baker and Baiers also specifically pled that they were pursuing their cross-claims against Viviano "in their capacity as shareholders" of the two LLCs. As to this claim they asked for unspecified damages, plus attorney fees, expenses and costs.
The trial court properly held that Baker and Baiers had no right of action against either Viviano or the nine entities (which included the two LLCs.) There were no allegations at all attempting to assert a right of action against any of the entities. As against Viviano, their pleadings, given the most liberal interpretation, can only be regarded as an attempt to assert a double derivative action. However, they had no right to bring a derivative action on behalf of either of the LLCs because they had no ownership interest in the LLCs when their suit was brought. They claim this right on account of some ownership in VLB. It may be that they do not even own any stock in VLB. At one time that stock was pledged to CPCI, and the record makes it appear the stock was later acquired by CPCI at a judicial sale. Be that as it may, even if they had an interest in VLB, and even if VLB has an interest in Nawlins, when this suit was brought Baker and Baiers did not have an interest in the LLCs. They were not shareholders or members, and having no proprietary interest in the LLCs, they had and have no standing to bring a derivative action on behalf of them. La.Code Civ.P. art. 615; Salmon & Assocs. v. Liskey, 94-2283 (La.App. 1 Cir. 10/6/95), 665 So.2d 412, writ denied, 96-0456 (La.3/29/96), 670 So.2d 1230.

3.
Judgment dated August 30, 2001, maintaining an exception of no right of action filed by CNO and the two individual Copelands as to the claims of Viviano, GBE, VLB, LAF, CBC, CPCI, I-Drive, and NKF, dismissing those claims.
Viviano and his entities accused CNO and the Copeland individuals, along with Baker and Baiers, of arranging to get investment money by withholding information about the franchise, and allowing investors like Viviano to put money into the ventures while ignorant of the franchise restrictions on transfers or encumbrances of interests, all with the ultimate purpose of flipping ownership of the franchises *1272 back to the Copelands. Viviano and his entities defined themselves somewhat imprecisely in their amending pleadings as "Viviano, GBE, LAF, CBC, CPCI, BCM, or Nawlins, or any combination of the foregoing."
They alleged that when Baker sold Viviano 1,000 shares of common stock of GBE for the purchase price of $225,000, the proceeds of that sale were used to enrich Baker and to expand the business of CNO. They alleged that Viviano, through some of his wholly owned entities, purchased notes totaling $1,050,000 and obtained pledges and other security rights on the misrepresentations and material omissions of the Cross Defendants. The petitions alleged that the Copelands knew about Viviano's investments but raised no questions or objections. It is alleged that no one disclosed to the Viviano interests their secret arrangement to flip the restaurants. Baker and Baiers, while they managed the restaurants, incurred unnecessary expenses, according to the original and amending cross-claims. Cross-Claimants alleged that they would not have made the investments had they known that the franchises could be terminated as a result of those transactions. The amending petition recites:

59.
No Cross-Claimant has received any payments, dividends, distributions, or income of any kind with respect to the securities and ancillary transactions referenced herein. The loans, security agreements, and other ancillary transactions have been defaulted on and/or have otherwise resulted in losses to Cross-Claimants.
60.
As a result of the aforedescribed actions and omissions, BCM, Nawlins, and I-Drive lost substantial future profits, to which they were and are entitled as a result of the aforementioned investments. These claimants also suffered other monetary and non-monetary losses. These claimants are entitled to recover for their losses and damages from Baker, Baiers, CNO, Al Copeland, and William Copeland.
In their prayer for relief the seven Cross-Plaintiffs, who included BCM and Nawlins, asked that the court award them "all damages including lost profits, other monetary and non-monetary damages, and/or rescissory damages as alleged and asserted hereinabove," as well as costs, expenses, and attorney fees. In its judgment granting the exception of no right of action on behalf of the CNO Defendants, the trial court did not include the claims of BCM and Nawlins among the claims dismissed. Thus, the trial court recognized that the two LLCs had asserted rights of action against these Defendants.
The trial court explained in its reasons for judgment:
In the present case, the actions of the CNO defendants that allegedly culminated in the termination of restaurant franchises, if true, were all directed against the franchisee companies, BCM, LLC and Nawlins Kajun Foods, LLC. The CNO defendants dealt officially with only the limited liability companies, which were in fact created for the very purpose of securing the restaurant franchises, and any wrongdoing would have been directed at them.
The reason Viviano put his money into the ventures was to make money. The same can be said for each of his entities, all legal persons. Whether the money was used to buy stock or make loans, those who put up the money were investing in the stores to make more money. The actual injury of which they complain has to be examined to determine if it was a loss distinct from what was suffered by the *1273 LLCs. The appellants say that the funds in excess of $1,000,000 loaned to the LLCs were not paid by the LLCs, and therefore cannot be recovered by them. This is not so, because the loans are a liability; if there is a recovery by the LLCs, they will be made whole, and if they are made whole they will be awarded an amount to pay their debts. Viviano has failed to set out any loss unique to him or to his entities. Rather, the two LLCs, as Cross Claimants with Viviano and his other entities, seek exactly the same damages for exactly the same reasons. The damages of all the dismissed Cross Claimants are derivative in nature. The judgment granting the CNO exception of no right of action was correct.

4.
Judgment dated January 10, 2002, maintaining an exception of no right of action filed by Verret as to the claims of Viviano, GBE, VLB, LAF, CBC, CPCI, BCM, Nawlins, and I-Drive, dismissing all those claims except those of BCM and Nawlins. The judgment declares that "[t]he claims of BCM L.L.C. and Nawlins Kajun Foods, L.L.C. remain."
BCM and Nawlins have asserted claims against their attorney, Verret. The same claims, indeed via the same pleadings, were asserted by Viviano and his non-franchisee entities. While recognizing that the LLCs as franchisees have the right to recover the lost profits, Viviano and his non-franchisee entitiesI-Drive, GBE, VLB, CBC, and CPCclaim they have the right to recover their investments separately from Verret. They claim this right whether or not there was an attorney-client relationship between them.
On behalf of I-Drive, they argue that it has an independent right to lost profits because it was created with the intention that it would ultimately be not only the operator but also the owner of the Orlando franchise. We agree with the trial court that I-Drive has not demonstrated a separate and independent claim. I-Drive never became the owner of the Orlando franchise. Money invested through it was for the benefit of Nawlins and its rights are subsumed in those of Nawlins. Those who invested in it will indirectly benefit from Nawlins' recovery if that ever comes to pass. If the jury finds that Nawlins is not entitled to recover from Verret, it will be because the jury finds that Verret did not commit a professional wrong against Nawlins, and if no wrong was committed against Nawlins, no wrong was committed against the other Cross Claimants. The trial judge found that I-Drive's claims were derivative and we agree.
The other non-franchisee parties would like to assert claims based on their investments or loans on the theory that Verret, as the attorney, orchestrated the financing arrangements by means of which the Cross-Claimants made their investments and loans. They claim that he provided advice and prepared the documents or directed the preparation of the documents for all the transactions viewed by the arbitrator as having violated the franchise agreements.
Specifically, CPCI says it was the direct lender of $1,050,000 to I-Drive and, because of the termination of the franchise, I-Drive cannot repay the loan. Also, CBC loaned Nawlins, Baker, and Baiers the same $1,050,000, and Verret prepared the pledge instruments. Then, "Viviano/LAF" are said to have an alleged right to recover the $225,000 they paid Baker for his now worthless stock in GBE, plus another $120,000 Viviano is said to have personally loaned I-Drive. Finally, the combination of entities described in their brief as "Viviano/LAF, CBC, VLB, and GBE" are argued to have rights of action for amounts paid for their interests in both franchises. The listing of these amounts begins with *1274 Viviano's original purchase of a 30% interest in BCM and ends with CBC's purchase of a one-third interest in Nawlins. For the same reasons discussed earlier maintaining the exceptions of no right of action filed by the Copelands against the claims of these same Cross-Claimants, and for the same reasons that we maintained the exception filed by the Viviano interests against the cross-claims of Baker and Baiers against them, we affirm the trial judge's ruling. The claims of Viviano and his entities, individually or collectively, are derivative of the claims of BCM and Nawlins.
The briefs treating the non-franchisee-versus-Verret issue spend a great deal of time on whether there was an attorney-client relationship between them; or whether, absent such a relationship, there was nevertheless a duty owed by Verret to them not to destroy the franchises. We believe that arguments over this issue miss the mark. The real issue is not whether the non-franchisee parties were wronged or harmed by Verret, but whether the wrong resulted in an injury having its origin in circumstances independent of their relationship with the franchisees, such that their damages are separate and independent of the damages suffered by the LLCs. We conclude, as did the trial judge, that they have not suffered separate and independent damages. Their loss is the same loss as that suffered by the LLCs. This point is nowhere better illustrated than in the affidavit testimony of Viviano himself when he said:
From the time when I first purchased an interest in BCM in April, 1995, through the arbitration proceeding invoked by CNO [July 1997] to terminate the franchises, Chris Verret was directly involved and acted as legal advisor for all legal and financial transactions in any manner concerning the Lafayette and Orlando franchises. He was the franchisees' general counsel and I relied on him in my personal capacity and as representatives of the companies that I owned, to assure the transactions that he recommended and prepared would not jeopardize the franchisees' existence.
The damage, if any, was done to the LLCs. The non-franchiseesas would any investor or shareholderrelied on the attorney for the franchisees to give the LLCs good advice, because that is where they had put their investments. But their personal losses were not independent of and having a source removed from the affairs of the LLCs. The damage claims were the property of the franchisees.
As reflected in the several hearings transcribed in the record, the trial judge was understandably concerned, and often questioned the attorneys, about the difficulty the jury would have apportioning damages if they made an award, and if the non-franchisee claimants were allowed to pursue individual claims side-by-side with the claims of the LLCs. It was this test that the trial judge repeatedly applied to determine if individual claims could be allowed to proceed. The court found that in every instance, it would not be possible for the jury to make a distinction, and that double recovery would be inevitable if non-franchisee parties were allowed to pursue claims. This reasoning is apparent from the colloquies in the record between court and counsel. We agree with that reasoning.

5.
Judgment dated January 24, 2002, maintaining an exception of no right of action filed by Verret as to the claims of Baker and Baiers, dismissing those claims.
For the reasons given in our discussion of the other four judgments, we affirm this judgment, too. Baker and Baiers have advanced no argument distinguishing their claim against Verret from the claims asserted by the two LLCs.
*1275 There is one issue, however, which has been raised by Baker, alone, in his appellate briefs that we have not discussed, and it is appropriate that we do that now. This issue applies not only to Baker's cross-claim against Verret, but also to his cross-claims against Viviano and his entities, and to his third-party claim against Sikes and his accounting firm. The issue is Baker's belated claim that he is an owner, along with Nawlins, of the Orlando franchise. This issue arises in the following manner.
Nawlins was formed in November 1994 for the commonly understood purpose of owning a franchise for the Orlando store. Its initial members were Baker and Baiers. In November, 1995, which was a year after the formation of Nawlins, Baker put down a $5,000 deposit, accepted by CNO, for a Nawlins franchise. In January, 1996, Baker and Baiers each transferred their interests in Nawlins (one-third each) to their respective solely-owned corporations, GBE and VLB. At about the same time CBC, a Viviano solely owned entity, became the other one-third owner of Nawlins. The Nawlins franchise was formally issued by CNO in September 1996, just a month before the Orlando restaurant opened. It was issued nominally to Baker and Nawlins. It is clear from the record that, after the 1995 deposit for the franchise, Nawlins did business as though it already had the franchise. The ownership changes and some of the money poured into the restaurant took place before the actual paper transaction of the issuance of the franchise. Nevertheless, it is clear from the pleadings that the investors knew that Nawlins would be the franchise owner. Most of the money was invested after the franchise was issued and the store opened for business. The evidence in the record, as well as the pleadings, reveal that Baker, in dealing with his personal interest in Nawlins, never counted any ownership in Nawlins, or the franchise, as part of his patrimony resulting from the deposit he had made on behalf of Nawlins. He divested himself of all his personal membership rights when he transferred his holdings to his corporation, GBE. Although he was a nominal franchisee, no one, including himself, ever treated him as one. In the transactions that occurred after the deposit, during the two years before the franchise was issued, and after the franchise was issued, Baker was never dealt with as having an ownership interest by virtue of his name appearing on the franchise with that of Nawlins. Most significantly, his own pleadings in these lawsuits expressly recognized BCM and Nawlins as the sole owners of the franchises. In the transcripts of hearings, we found that the subject of his franchisee status was tentatively mentioned but always promptly dismissed. The subject also made an appearance in Baker's appellate briefs but without strong argument. No one has ever seriously thought that Baker had an interest in the Nawlins franchise. The trial judge concluded that Nawlins was the sole owner. Based on the record we independently reach the same conclusion.

OTHER ISSUES
The remainder of this opinion, which will deal with the few other issues before us, will be cast in the form of a memorandum opinion as authorized by Rule 2-16.1(a)(2), Uniform Rules of Louisiana Courts of Appeal.
The first is a Motion to Correct the Record filed by Baker and Baiers. We referred the motion to the merits and now deny it. Our reason for the denial is that the exhibits sought to be included in the record on appeal (excerpts of deposition testimony of Sikes and Verret) are already in the record and have been considered by *1276 us in our decisions on the exceptions of no right of action.
The next issue is one raised by the CNO Appellees regarding the brief of Viviano and his entities. The CNO Appellees have asked us to disregard the brief because of its failure to comply with Rule 2-12.4, Uniform Rules of Louisiana Courts of Appeal, which requires a specification or assignment of errors by an appellant. The Viviano Entities are both Appellants and Appellees. Because of that, and because there are a number of litigants appealing in these consolidated cases, the Viviano Entities were affected by our Uniform Rule 2-12.7, which required that they be treated as an appellee in the calculation of the time when their brief was due. In an apparent belief that their designation as an appellee affected them in other ways as well, they did not formally specify errors in the portion of their brief written as appellants. However, the headings of their arguments as appellants clearly enumerated and set forth in what ways they believed the trial court erred. It was appropriate under the circumstances for us to consider, and we did consider, every issue that they raised. La.Code Civ.P. art. 2164; Nicholas v. Allstate Ins. Co., 99-2522 (La.8/31/00), 765 So.2d 1017.
The CNO Defendants also contend that the amending and supplemental cross-claim petition of Viviano and his entities was an unauthorized pleading and should not be considered by us. We reject this contention. The record reveals that the filings were authorized by means of an extension of the deadline for filing amending pleadings.
These eight appeals came to us in sets of four, the cases within each set consolidated. We have also consolidated the sets. Our opinion is being handed down in Glod v. Baker, 02-988 (La.App. 3 Cir. 8/6/03), 851 So.2d 1255, and separate judgments are being rendered this date in the other seven appeals bearing the same name and assigned our numbers 02-989, 02-990, 02-991, 03-206, 03-207, 03-208, and 03-209.
For the reasons given above, all judgments are affirmed. Costs of this appeal shall be paid two-thirds by Baker and Baiers, and one-third by Viviano and his entities not to include the two LLCs.
AFFIRMED.