755 So.2d 910 (1999)
Walter A. GLOD, Jr., M.D.
v.
Gregory BAKER, et al.
No. W99-0872.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1999.
Writ Denied January 26, 2000.
*911 Joseph C. Giglio, Jr., Lafayette, for Walter A. Glod, Jr., M.D.
George Allen Walsh, Baton Rouge, for W. Gregory Baker et al.
Robert A. Kucther, Nicole Sophia Tygier, Metairie, for Alvin Copeland et al.
Jessica Farmer Watts, Lafayette, for M.L. Godley, M.D., etc.
Nancy Scott Degan, Roy Clifton Cheatwood, New Orleans, for Louis B. Viviano, et al.
L. Lane Roy, Lafayette, for Chris A. Verret.
William H. Parker, III, Baton Rouge, for Larry Sikes, et al.
Reginald Ringuet, pro se.
Before: YELVERTON, THIBODEAUX, and SULLIVAN, Judges.
YELVERTON, J.
Alvin C. Copeland, William A. Copeland, and Copeland's of New Orleans, Inc. (together we will refer to them as "the Copelands") appeal a judgment denying their exception of res judicata. They argue that cross-claims filed against them by several defendants in this case are res judicata and should have been asserted in a previous arbitration proceeding.

FACTS
The facts in this case center around two Copeland's restaurants, one in Lafayette, Louisiana and one in Orlando, Florida, and the financial relationships involved in opening these two restaurants. In 1994, William Baker entered into a franchise agreement with Copeland's of New Orleans (CNO) to open a Copeland's restaurant in Lafayette. Subsequently, on November 16, 1994, Baker transferred all his interests in the franchise agreement to BCM, L.L.C. This was with the written consent of CNO. BCM is a Louisiana limited liability company which was organized in November 1994. The members of BCM were Baker and Vikki Baiers.
Money was needed to get the restaurant running so other investors were approached by Baker. One of these investors was Louis Viviano, who is one of the cross-claimants in this suit. Viviano agreed to invest $200,000 for a 30% interest in BCM on behalf of LAF Foods, Inc., a corporation he created for the express purpose of holding this interest. Walter Glod, the original plaintiff in this suit, agreed to invest $100,000 for a 15% interest in BCM. Baker and Baiers signed an Admission of Members and Amendment to Operating Agreement recognizing the transfer of interest in BCM to LAF Foods, Inc. and Glod. As a result Baker and Baiers each owned a 27.5% interest in BCM.
Copeland's in Lafayette opened in September 1995. As seems to be the practice in this case, more transfers of interests took place. It appears from the briefs that Baker and Baiers transferred the entirety of their remaining individual interests in BCM into two corporations, Greg Baker Enterprises, Inc. (GBE) and VLB, Inc., each wholly owned by its name-sake. LAF Foods also transferred its interest in BCM to CBC International, Inc. (CBC)
Having successfully opened one restaurant, Baker began attempts at opening another in Orlando. Viviano, acting *912 through CBC, acquired a one-third interest in Nawlins Cajun Foods, L.L.C. at a cost of $75,000. Baker and Baiers each controlled the remaining two-thirds interest. In September 1996, CNO entered into another franchise agreement with Baker and Nawlins to open a restaurant in Orlando.
Subsequently, NKF I Drive Limited Partnership (I Drive) was formed to serve as the operating entity for the Orlando Restaurant. NKF, Inc. was also formed. NKF, Inc. acquired a ten percent interest in I-Drive as a general partner. NKF eventually became a Viviano entity also. Other eventual partners in I Drive were Nawlins and another Viviano entity, CPCI, Inc., as Class B limited partners, and several individuals as Class A limited partners.
So that Nawlins could purchase furniture, fixtures, and equipment for the Orlando store, Viviano, acting through CBC, loaned $450,000 to Nawlins. This loan was secured by the Orlando restaurant's furniture, fixtures, and equipment. Viviano, acting through CBC, also began purchasing individual notes from Nawlins that eventually totaled $1,050,000. The restaurant in Orlando opened in September 1996.
Still more operating funds were needed which were loaned by Viviano through similar transactions and eventually resulted in Viviano becoming owner of GBE and the majority shareholder in both BCM and Nawlins. CNO then instituted arbitration proceedings seeking termination of the franchise agreements for both the Lafayette and Orlando restaurants, demanding that it be allowed to assume the lease for the restaurants and take title to the furnishings, fixtures, and equipment, and also asking for an award of damages, costs, expenses, and attorney's fees. CNO claimed that transfers of the franchisees' interests and security interests in the franchises had been performed without its prior written consent as mandated by the franchise agreement. On September 30, 1997, the arbiter entered an award terminating both franchise agreements effective 30 days immediately following the date of the arbitration award.
On December 4, 1997, Glod filed the present lawsuit naming Baker, Baiers, Viviano, the entities controlled by Viviano (GBE, VLB, LAF Foods, CBC), and an attorney who handled many of the transactions, as defendants. In this suit, Glod seeks to recover losses he incurred as a result of the termination of the franchise for the Lafayette restaurant. He alleges the defendants' actions in transferring the franchise interests among themselves and pledging and mortgaging franchise interests resulted in the termination of the franchise agreement causing a $100,000 loss of his initial investment.
Viviano and his entities answered filing a reconventional demand and cross-claims. We note that although Nawlins, CPCI, and I Drive were not named as defendants by Glod, they answered the petition. These entities only participated in the Orlando restaurant in which Glod did not participate. Also, the Copelands were added as defendants in cross-claim, but were never named as defendants in the original suit. The Copelands, in brief, agree that they are third-party defendants. Viviano and his entities seek recovery under the theories of unfair trade practices, securities fraud, tortuous misrepresentation, detrimental reliance, intentional interference with contractual relations, conversion, and abuse of process.
Among other motions and exceptions filed by the Copelands, the Copelands filed an exception of res judicata against Viviano and his entities claiming their claims are barred by the award of the arbiter. A hearing was held on April 19, 1999. The trial court denied the exception. The Copelands now seek supervisory review of the denial of their exception of res judicata.
Because of the complexity of the case and because we needed the record to help resolve it, we granted a writ and called up *913 the record for briefing, arguments, and a full opinion.

RES JUDICATA
In denying the Copelands' exception of res judicata the trial court found the causes of action raised by the cross-claim plaintiffs were neither raised nor disposed of in the arbitration proceeding. The trial court concluded that the arbitration clause of the franchise agreement did not contemplate any causes of action other than those that would arise from the interpretation of an implementation of the contract itself.
Res Judicata is provided for in La.R.S. 13:4231 as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
The main contention that the Copelands now argue in support of their exception of res judicata is that the claims raised by the cross-claimants in the present suit should have been asserted in the arbitration proceedings below as affirmative defenses. The Copelands argue that except for the claims arising out of the operation of the restaurants by CNO after the termination of the franchises (the conversion claim which is not at issue in this appeal), all of the claims raised in the cross-claims arise out of the same series of transactions and occurrences which were the subject of the arbitration proceedings to terminate the franchises. They further argue that all the cross-claim plaintiffs, with the exception of Viviano, were formal parties to the arbitration award, and that Viviano is bound by the arbitration award by virtue of his participation in the proceedings and his privity with the various corporations he used to effect control of the franchises.
The award of an arbiter is res judicata and "must be affirmed unless grounds are established, in accordance with arbitration law, for the vacation, modification or correction of the award." Farmers Cotton Co., Inc. v. Savage, 30,289 p. 4 (La.App. 2 Cir. 6/26/98); 714 So.2d 926, 928, writ denied, 98-2322 (La.11/20/98); 728 So.2d 1288. The franchise agreement provided that the Federal Arbitration Act would govern the arbitration proceedings, and pursuant to 9 U.S.C. § 9, the award of the arbiter was confirmed on January 27, 1997, although the Copelands had sought to modify the award. The Copelands only named BCM, Nawlins, and Baker in this petition.
The logical first step in addressing this issue in this case is to look to the language of the arbitration clause in the Lafayette and Orlando franchise agreements to determine what claims the franchise agreement contemplated would be arbitrated. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
Except for controversies, disputes or claims related to or based on Franchisee's use of the Proprietary marks after the expiration or termination of this Agreement, all controversies, disputes or claims between Franchisor and its *914 shareholders, officers, directors, agents and employees and Franchisee (its owners, guarantors, affiliates and employees, if applicable) arising out of or related to: (1) this Agreement or any other agreement between Franchisee and Franchisor or any provision of such agreement; (2) Franchisor's relationship with Franchisee; (3) the validity of this Agreement or any other agreement between Franchisee and Franchisor or any other provision of any such agreement; or (4) any System standard relating to the establishment or operation of the business will be submitted for arbitration on demand of either party....
Pursuant to this arbitration clause, CNO, not including the individual Copeland defendants involved in this proceeding, initiated arbitration proceedings against all the cross-claim plaintiffs and others, except for Viviano personally. CNO sought "to have the improper transfers [transfers of interests in Copeland's] declared null and void and considered to be material breaches of the franchise agreements for which CNO may then terminate without opportunity to cure as permitted in Section 14.2.4 of the franchise agreements." There is no doubt that termination of the franchise agreements would be an arbitrable claim.
However, in a pre-hearing memorandum, CNO stated that "[t]he only determinations to be made by the Arbiter, both under the law of the state of Louisiana and the terms of the contracts, is whether CNO is entitled to terminate [sic] of the Franchise Agreements due to conduct in default of the agreements by the operation of the Orlando store." When Copeland's sought to confirm the arbiter's award in district court, it stated that "[t]he only issue before the Arbiter was whether the Franchise had been breached and CNO was entitled to have the Agreements terminated." Furthermore, the Copelands' attorney testified by deposition that it was determined at a conference with the arbiter "that the Arbiter would address the termination, whether or not the franchise agreements would be terminated, and determine the parties' attorneys' fees, their entitlement to attorneys' fees, and that we would not be going beyond that issue."
[O]nce the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority.
If the parties enter into a submission agreement, this later contract is the substitute for legal pleadings; it joins the issues between the parties and empowers the arbitrator to decide it....
The parties may act formally and enter into a written submission agreement or they may merely ask the arbiter to decide the written grievance as it has been posed in their conciliation efforts. When they do so, they have in effect empowered him to decide the issues stated in the grievance. The grievance itself becomes the submission agreement and defines the limits of the arbitrator's authority. Arbitration is a matter of contract, but the initial contract to arbitrate may be modified by the submission agreement or grievance.
Piggly Wiggly, Etc. v. Piggly Wiggly, Etc., 611 F.2d 580, 584 (5 Cir.1980) (citations omitted).
Parties can agree to expand the scope of an arbitration proceeding, so there is no reason why they cannot also limit the scope of the proceeding. It is evident that CNO itself limited the arbitration proceeding to a determination of whether the franchise agreements should be terminated for breach of the provisions of the agreements. This is what was agreed upon by the parties at a conference with the arbiter and is memorialized in writing.
The Copelands argue the claims raised by the cross-claim plaintiffs in this proceeding, with the exception of the claim for conversion of assets which arose after the *915 award of the arbiter, are part of the transaction or occurrence involved in the arbitration proceeding because the purchase of the interests in the franchises were part of the same transaction or occurrence as the arbitration proceeding which determined that these transfers were grounds for terminating the franchise. The Copelands argue that the relief sought by the cross-claim plaintiffs is nothing more than a collateral attack on the award of the arbiter since they are seeking to impose liability on them for the termination of the franchises after an arbiter and a court have told CNO it has the right to do so. The Copelands argue the cross-claim plaintiffs should have raised these claims as affirmative defenses in the arbitration proceedings. On the other hand, the cross-claim plaintiffs argue they did not know about their claims until discovery was conducted during the arbitration proceedings and they were not damaged until the award of the arbiter terminated the franchises.
This court in Hy-Octane Investments. v. G & B Oil Prod. 97-28 (La.App. 3 Cir. 10/29/97); 702 So.2d 1057, discussed the meaning of the term "transaction or occurrence" as it concerns the doctrine of res judicata. We noted no code articles define the expression but the articles equated the term with the subject matter of the litigation, or the principal demand or action, or the original action and it was to be determined on a case-by-case basis.
The demands asserted by the cross-claim plaintiffs in the present suit arise from the Copelands' alleged participation in activities undertaken in concert with Baker and Baiers to deprive cross-claim plaintiffs of sizeable investments and lost profits connected to the Copelands' restaurants in Lafayette and Orlando. These alleged activities have nothing to do with the franchise agreements. The cross-claim plaintiffs have not asserted any claims contesting the validity of the franchise agreements or their provisions. They do not dispute the termination of the franchise agreements pursuant to the arbitration proceedings. The franchise agreements themselves are not at issue in the present suit.
We find the claims raised by the cross-claim plaintiffs in the present suit were not part of the transaction or occurrence that was the subject of the previous arbitration proceeding. Therefore, pursuant to La. R.S. 13:4231, the trial court was correct in denying the Copelands' exception of res judicata.
We note there are many other issues in this case which we need not discuss. However, we find they are worth noting as other possible alternatives for denying the exception of res judicata. For example, were the parties who did not sign the arbitration agreement, but were named as defendants in the proceedings, obliged to arbitrate disputes? We note with interest the Copelands use the concept of privity to argue that they are, but claim that CNO was entitled to terminate the agreements because it did not consent to the transfers of interests in the franchises to these same parties. It also appears from the facts, as laid out by the cross-claim plaintiffs, the Copelands may well have been aware of Viviano's participation in the franchises from the beginning, although this will be a fact to be determined by the trial court as this case proceeds. We are also aware that all parties involved in these claims are sophisticated business people who have made calculated decisions to handle matters as they have. Furthermore, as noted by all parties, there are additional parties in these claims who were not involved in the arbitration proceedings; there are two individual Copeland defendants, and Viviano himself is a cross-claim plaintiff. There may be arguments that these parties are so related to the parties involved in the arbitration proceedings that they should be held subject to it also. And, admittedly, at least one claim by the cross-claim plaintiffs did not arise until after the award of the arbiter.
*916 Though we do not address these numerous complex issues, we list them to demonstrate the complexity of this commercial litigation case. These issues illustrate there is not simply a matter of the arbitration proceedings having a conclusive res judicata effect on the present proceeding.
For the reasons set forth in this opinion, the application for writs filed by Alvin Copeland, William Copeland, and Copeland's of New Orleans, Inc. is denied.
WRIT DENIED.