872 So.2d 1147 (2004)
HOLLY & SMITH ARCHITECTS, INC.
v.
ST. HELENA CONGREGATE FACILITY and St. Helena Parish Hospital.
No. 2003 CA 0481.
Court of Appeal of Louisiana, First Circuit.
February 23, 2004.
*1150 Ron S. Macaluso, Hammond, Counsel for Plaintiff/Appellee Holly & Smith Architects, Inc.
Craig L. Kaster, Zachary, Counsel for Defendant/Appellant St. Helena Parish Hospital.
Before: FOIL, FITZSIMMONS, and GAIDRY, JJ.
FITZSIMMONS, J.
Holly and Smith Architects, Inc. (Architects) filed a petition for (1) confirmation of an arbitration award against defendant, St. Helena Congregate Facility, Inc. (Congregate), and (2) declaratory judgment against defendant, St. Helena Parish Hospital (Hospital). In the action for declaratory judgment, Architects alleged that Congregate was the alter ego of the Hospital, and thus, the Hospital was liable for the arbitration award of $38,000.00 to Architects. Over the course of the proceedings, the Hospital filed several peremptory exceptions raising the objection of res judicata to the issues raised by Architects. The Hospital asserted that the claims between Architects and the Hospital, including the alter ego claim, had been settled in arbitration. The trial court found that the Hospital was not a party to the arbitration and denied the exceptions of res judicata.
Once the arbitration award was confirmed, the issue of alter ego proceeded to trial. After a trial on the merits, the trial court found that Congregate was incorporated solely to benefit the Hospital and to obtain
financing for the construction of the congregate facility. All meetings were conducted at the [Hospital] Board's office and were between the plaintiff and the [Hospital] Board or its chairman, Mr. Lombardo. There was never any intention that the corporation would be anything but ... an extension of the *1151 Board. "The legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it a mere instrumentality or adjunct of another corporation." Grayson v. R.B. Ammon and Associates, Inc., 99-2597 (La.App. 1 Cir. 11/3/00), 778 So.2d 1.
Having found those particular facts, the trial court authorized a "piercing of the corporate veil," which allowed liability to be imposed on the Hospital. By judgment dated May 16, 2002, the trial court held Congregate and the Hospital liable, and ordered them to pay Architects $38,000.00, plus cost, expenses, and interest. The Hospital appealed. We affirm.

FACTS
After years of negotiations with the Hospital, Architects entered into a written contract with Congregate to develop and build 24 congregate living units for the elderly on land owned by, and adjacent to, the Hospital. In the contract, the two parties, Architects and Congregate, agreed to an arbitration clause. The clause provided, in pertinent part, as follows:
7.1 Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.
7.3 No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement signed by the Owner, Architect, and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by the parties to this Agreement shall be specifically enforceable in accordance with applicable law in a court having jurisdiction thereof. (Emphasis added.)
When the contract between Architects and Congregate was terminated by the Hospital, Architects filed a demand for arbitration against Congregate and the Hospital. The arbitrator found in favor of Architects and against Congregate. The Hospital asked the arbitrator for a clarification of its position in the award. By a document dated April 2, 1996, the arbitrator found that the reviewed contract between the parties, Congregate and Architects, assigned no obligations to the Hospital. The suit by Architects ensued.
In this appeal, the Hospital essentially argues that the trial court erred in its denial of the exception of res judicata, the admittance of hearsay documents, and the finding that Congregate was the alter ego of the Hospital. The Hospital asserts that the record contains no evidence that Congregate was formed solely for the benefit of the Hospital.

RES JUDICATA
The Civil Code provisions governing arbitration are contained in articles 3099, et seq. The addenda to those codal articles are found in the Civil Code ancillaries, La. R.S. 9:4201, et seq. In addition, reference should be made to the doctrine of res judicata as enunciated in La.C.C.P. art. 425 and La.R.S. 13:4231-32. The pertinent *1152 legal precepts applicable to this particular case are found in the following:
C.C. Art. 3099. Submission to arbitrate
A submission is a covenant by which persons who have a lawsuit or difference with one another, name arbitrators to decide the matter and bind themselves reciprocally to perform what shall be arbitrated.
C.C. Art. 3100. Writing Necessary
A submission must be reduced to writing. (Emphasis added.)
C.C. Art. 3102. Scope of submission

Parties may submit either all their differences, or only some of them in particular; and likewise they may submit to arbitration a law suit already instituted or only in contemplation, and generally every thing which they are concerned in, or which they may dispose of. (Emphasis added.)
C.C. Art. 3104. Power of arbitrators
The power of arbitrators is limited to what is explained in the submission.
C.C. Art. 3121. Arbitrators acting in excess of power, effect
Arbitrators can not exceed the power which is given to them; and if they exceed it, their award is null for so much.
C.C. Art. 3122. Scope of arbitrators' authority
The authority of arbitrators [extends] only to the things contained in the submission, unless it has been stated that they shall have power to decide all disputes which may arise between the parties in the course of the arbitration.
La. R.S. 9:4201. Validity of arbitration agreements
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (Emphasis added.)
La. C.C.P. Art. 425. Preclusion by judgment
A. A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation. (Emphasis added.)
La. R.S. 13:4231. Res judicata

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment. (Emphasis added.)
The same general rule applies when the judgment is in favor of the defendant. Whether a cause of action arises out of the same transaction or occurrence is determined by an examination of the facts underlying the event in dispute. See Leon v. Moore, 98-1792, p. 5 (La.App. 1 Cir. 4/1/99), 731 So.2d 502, 505, writ denied, 99-1294 (La.7/2/99), 747 So.2d 20 *1153 (same factual transaction underlying motion to exclude and petition for damages).
Initially, we note that the issue of alter ego did not arise under the development contract between Congregate and Architects. Rather, that issue arose via a claim concerning the liability of a third party, the Hospital. Secondly, based on the clear wording of the arbitration clause in the contract between Congregate and Architects, the arbitrator's clarification of the determinations made, and the applicable law, we find that the Hospital was not a named party to the arbitration proceeding. In addition, the issue of alter ego was not properly submitted to arbitration or ruled on by the arbitrator. Our review of the record found no evidence of a written submission, by Architects, Congregate, and the Hospital, of a new party or the issue of alter ego. The arbitrator ruled based only on the contractual obligations assumed by Congregate and Architects, and found that the Hospital owed no obligations under the written contract. Contrary to the Hospital's assertions, the clarification cannot be reasonably interpreted as a consideration and rejection of the alter ego claim that arose outside of the contract provisions. Even if the arbitrator had chosen to decide the issue, the decision on an un-submitted issue would be "null." La. C.C. art. 3121; see La. C.C. arts. 3104; 3122. As with the written contract between Architects and Congregate, the civil code and ancillaries would also require a written submission for the addition of either a non-contracting party or a new issue. La. C.C. art. 3099, 3100 & 3102; La. R.S. 9:4201.
Unlike litigation, which is subject to general principles of the doctrine of res judicata, the rules of arbitration allow, and indeed require, the arbitration parties to identify the specific issues for submission. Rather than an automatic blanket inclusion of all claims arising from the same facts comprising the subject matter of the litigation, arbitration issue selection is exclusive. Only specifically selected issues are subject to arbitration. La. C.C. arts. 3102 & 3104 (arbitration is limited to the issues properly submitted by the parties). The arbitrator's very authority is limited by the submission. La. C.C. arts. 3104, 3121-22. Only submitted issues may be decided, and a party cannot be required to submit an issue that he has not previously agreed to arbitrate. Woodrow Wilson Construction Company, Inc. v. MMR-Radon Constructors, Inc., 93-2346, pp. 3-4 (La.App. 1 Cir. 4/8/94), 635 So.2d 758, 759, writ denied, 94-1206 (La.7/1/94), 639 So.2d 1167. Thus, issues not specifically selected are reserved for other means of resolution, and are not subject to the bar of res judicata. See Glod v. Baker, 99-0872 (La.App. 3 Cir. 12/8/99), 755 So.2d 910, writ denied, 00-0039 (La.1/26/00), 753 So.2d 223; La. C.C.P. art. 425 (referring to litigation, not arbitration); La. R.S. 13:4231 (referring to exceptions provided by law). To hold otherwise would effectively overrule the legislative decision to allow parties who elect arbitration to pick and choose their issues.
Here, unlike the cases relied on by the Hospital, there was a non-contracting party who was not properly submitted as a party to the arbitration. Similarly, the issue of alter ego was not before the arbitrator. Therefore, we find no error in the trial court's denial of the exception of res judicata.

EVIDENCE
The Hospital specifically asserts that plaintiff's exhibits 2, 4-13, and 17 are hearsay and were not properly authenticated. Plaintiff's exhibit 16 is challenged for relevancy only.
Hearsay is "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in *1154 evidence to prove the truth of the matter asserted." La. C.E. art. 801 C. "A statement is not hearsay if ... offered against a party and is ... [h]is own statement, in either his individual or a representative capacity," a statement the party adopted, a statement by a person that was authorized by the party, or one by an agent or employee made within the scope and course of his employment. La. C.E. art. 801 D(2) & (3)(a). If the statement is hearsay, it is not admissible, unless a specific exception can be found. La. C.E. art. 802; see La. C.E. arts. 803-04.
In addition, the evidence code requires authentication and identification. La. C.E. art. 901 A. However, the requirement is generally "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." La. C.E. art. 901 A. For example, authentication may be made by the testimony of a knowledgeable witness and by a nonexpert's opinion on handwriting based on familiarity. La. C.E. art. 901 B(1) & (2). "A trial court's determinations regarding what evidence is admissible for the trier of fact to consider and whether a plaintiff has sufficiently proven its case will not be overturned absent clear error." Folse v. Folse, 98-1976, p. 11 (La.6/29/99), 738 So.2d 1040, 1046; see La. C.E. art. 103 A; Grayson v. R.B. Ammon and Associates, Inc., 99-2597, p. 8 (La.App. 1 Cir. 11/3/00), 778 So.2d 1, 10, writs denied, 00-3270, 00-3311 (La.1/26/01), 782 So.2d 1026, 1027.
Plaintiff's exhibit 2 purports to be a copy of the by-laws, rules, and regulations for the Hospital. However, we can find no authentication by an appropriate party. See La. C.E. art. 901.
Exhibits 4-7, 9, and 11 are letters written by the Hospital, a party to the suit. Similarly, exhibit 12 is an application generated by the Hospital, and made to the Farmer's Home Administration (FHA), a division of the U.S. Department of Agriculture. The Hospital sought federal financial assistance on the housing project. The letters and application from the Hospital are admissions by a party, or its representative or agent, used against that party, and, therefore, not hearsay. See La. C.E. art. 801 D(2) & (3)(a); State v. Strickland, 94-0025, p. 22 (La.11/1/96), 683 So.2d 218, 229; State v. Lutcher, 96-2378, p. 11 (La.App. 1 Cir. 9/19/97), 700 So.2d 961, 970, writ denied, 97-2537 (La.2/6/98), 709 So.2d 731; State v. Glynn, 94-0332, p. 21 (La.App. 1 Cir. 4/7/95), 653 So.2d 1288, 1304, writ denied, 95-1153 (La.10/6/95), 661 So.2d 464. As for authenticity, trial testimony from Architects and a Hospital representative was sufficient to identify the exhibits and reasonably showed that they were what they claimed to be. See La. C.E. art. 901 A & B.
Exhibits 8 and 10 are letters written, and authenticated at trial, by Architects. The letters from Architects to the Hospital were primarily introduced to show that project negotiations were always with the Hospital, not Congregate. Thus, their primary purpose was not to prove the truth of each statement asserted in the letters, but to prove that Congregate was the alter ego of the Hospital. For such a purpose, the letters could have reasonably been found not to meet the definition of hearsay. See La. C.E. art. 801 C.
Exhibit 13, a letter from the Bank of Greensburg to the FHA, was sufficiently authenticated by a witness, albeit one who was not a representative of the Bank or the FHA. However, neither the Bank nor the FHA is a party to the suit.
Exhibit 16, a letter from the Louisiana Legislative Auditor's office to the attorney for Architects, was challenged only as to relevancy. To be admissible, evidence must be relevant, that is, the *1155 evidence must tend to make a material fact "more probable or less probable than it would be without the evidence." La. C.E. arts. 401 & 402. Congregate was a party to the suit whose financial independence and corporate identity were issues at trial. In the letter, the auditor notes that he has no audit for Congregate. Therefore, we find that the record supports a finding that exhibit 16 was sufficiently relevant to the question of Congregate's corporateness.
Exhibit 17 originates from a non-party. It contains a letter and documents from the FHA to the Hospital, subsequently faxed by the Hospital to Architects. We also note that the Hospital cross-examined Architects' representative on exhibit 17. However, the Hospital did not merely attack the documents as unreliable or unauthentic. It used the exhibit to show that the funding had never been approved. Although not a point before the court, it was a fact necessary to prove the Hospital's recurring allegation that it did not owe anything to Architects.
After our thorough review of the record, and consideration of the applicable law, we find that the trial court erred in allowing exhibits 2 and 13. Exhibit 2 was not authenticated and number 13, from a non-party, was hearsay. Exhibit 17 may also have been disallowed as hearsay. However, the Hospital used the exhibit to make a point on its own behalf. By choosing to use the plaintiff's exhibit in an affirmative sense, we find that the Hospital waived its prior objection. See Combs v. Hartford Insurance Company, 544 So.2d 583, 585-86 (La.App. 1 Cir.), writ denied, 550 So.2d 630 (La.1989); Pryor v. United Services Automobile Association, 98-1371, p. 6 (La.App. 4 Cir. 2/10/99), 729 So.2d 658, 661, writ denied, 99-0686, 99-0701 (La.4/30/99), 741 So.2d 16, 17; see generally State v. Page, 95-2401, p. 19 (La.App. 4 Cir. 8/12/96), 680 So.2d 700, 713, writ denied, 96-2352 (La.2/21/97), 688 So.2d 522. Alternatively, exhibit 17 was faxed by the Hospital to Architects and its use by plaintiff was primarily to establish the alter ego claim. It was not offered to prove the truth of the matters asserted in the letter and attached documents. See La. C.E. art. 801 C. In that pursuit, the exhibit was also cumulative of many other exhibits and testimony.

ALTER EGO-SINGLE BUSINESS ENTERPRISE
In Louisiana, corporations are generally recognized as separate legal entities. However, the legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it merely an instrumentality or adjunct of another corporation. If one corporation is wholly under the control of another, the fact that it is a separate entity does not relieve the dominant corporation from liability. In such an instance, the former corporation is merely an alter ego or business conduit of the dominant corporation. Thus, when supposedly separate corporations are operated as the same single business enterprise, courts may pierce the corporate veil to reach the dominant corporation. Grayson, 99-2597 at pp. 16-17, 778 So.2d at 14. Some of the factors that may be considered are:
(1) identity of stock ownership;
(2) common directors and officers;
(3) unified administrative control;
(4) directors and officers of one entity operate independently in the interest of the other;
(5) one corporation financing another;
(6) inadequate capitalization;
(7) corporation causing the incorporation of another;
(8) one corporation paying the salaries and expenses of another;

*1156 (9) corporation receives no business except from the other corporation;
(10) corporation using the property of the other as its own;
(11) noncompliance with corporate formalities;
(12) common employees;
(13) common offices;
(14) central accounting;
(15) undocumented transfer of funds;
(16) unclear allocation of profit and loss between the two corporate entities; and,
(17) excessive fragmentation of a single business enterprise into separate corporations.
No one factor is dispositive, and the totality of the circumstances should be considered. Grayson, 99-2597 at pp. 19-20, 778 So.2d at 15.
The alter ego question is one of fact, and the plaintiff's burden of proof is clear and convincing evidence. Grayson, 99-2597 at pp. 18 & 20, 778 So.2d at 14-15. On review, the appellate court may not reverse the factfinder's factual determinations unless the record does not provide a reasonable factual basis for the finding; and, the finding is manifestly or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
The trial court found that Congregate was created solely for the benefit of the Hospital in an effort to obtain federal financing for the Hospital's housing project. Thus, Congregate was merely "an extension" of the Hospital. The court also determined that "[a]ll meetings were conducted" with the Hospital, not Congregate.
After a thorough review of the record, excluding plaintiff's exhibits 2 and 13,[1] we find no manifest error or erroneous application of law by the trial court. The record provides the requisite support for the following:
1. Congregate had no bank account;
2. Congregate had no assets;
3. Congregate and the Hospital had generally the same board;[2]
4. Congregate was incorporated by the Hospital to receive the federal funding for the housing project;
5. Architects' negotiations for the housing project were with the Hospital, not Congregate, and initially contemplated the use, by Congregate, of Hospital land without remuneration;
6. the Hospital negotiated for the federal approval and funding, not Congregate;

*1157 7. the Hospital agreed that it was responsible for any cost overruns on the project; and
8. Architects' contract with Congregate was terminated by the Hospital, not Congregate.
In addition to the above facts, the transcript reveals that during the trial the Hospital continued to exhibit a proprietary view of Congregate and the development and negotiations surrounding the housing project. The Hospital did not treat Congregate as an independently involved entity. Thus, we cannot say that the trial court was clearly wrong in finding that Congregate was a mere "extension" of the Hospital and that the Hospital was liable.
For these reasons, we affirm the judgment of the trial court. The costs of the appeal, $2,530.00, are assessed to appellant, the Hospital.
AFFIRMED.
NOTES
[1] Although plaintiff's exhibits 2 and 13 were improperly allowed as evidence, we find that the admissions do not rise to the level of reversible error. The Hospital failed to show that a substantial right was affected or that the erroneous evidentiary rulings prejudiced its defense. See La. C.E. art. 103 A; Emery v. Owens-Corporation, 2000-2144, pp. 7-8 (La. App. 1 Cir. 11/9/01), 813 So.2d 441, 448-49, writ denied, 02-0635 (La.5/10/02), 815 So.2d 842. The by-laws were not particularly relevant to the issue of alter ego, and the names of the Hospital's board members were proven through other exhibits. Any effect the Bank of Greensburg's letter may have had was also cumulative. The Hospital's level of participation in the project was established by other exhibits. See State Farm Mutual Automobile Insurance Company v. Little, 34,760, pp. 4-5 (La.App. 2 Cir. 6/20/01), 794 So.2d 927, 930-31 (Hearsay evidence was harmless error when non-hearsay evidence found to support judge's finding.).
[2] In its brief, the Hospital argued that the boards were different. However, when Mr. Lombardo's testimony is read in toto, the reference relied on by the Hospital is to another project and corporation, not Congregate. Earlier in his testimony, in response to a question, Mr. Lombardo admitted that the boards of Congregate and the Hospital were the same. This is affirmed by a comparison of the Hospital's letterhead, listing its board members, and Congregate's incorporation papers from the Louisiana Secretary of State.