STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * *

2021 CA 0157

HILL INTERNATIONAL, INC.

VERSUS

JTS REALTY CORPORATION, PERKINS ROWE ASSOCIATES,
L.L.C., AND PERKINS ROWE ASSOCIATES II, L.L.C.

JUDGMENT RENDERED: **OCT 2 0 2022**

* * * * * * *

Appealed from
The Nineteenth Judicial District Court
Parish of East Baton Rouge • State of Louisiana
Docket Number 591,590 • Section 27

The Honorable Trudy M. White, Presiding Judge

* * * * * * *

Juston M. O'Brien
Brad M. Barback
Baton Rouge, Louisiana

COUNSEL FOR APPELLANT
DEFENDANT–Glen R. Jarrell, ·
Trustee of the Spinosa Class


James E. Moore Jr.
Brian L. McCullough          .
Baton Rouge, Louisiana

COUNSEL FOR APPELLANTS
DEFENDANTS—JTS Realty
Corporation; JTS Realty Services,
L.L.C.; JTS Management
Company, L.L.C.; Perkins Rowe
Associates, L.L.C.; Perkins Rowe
Associates II, L.L.C.; and Joseph
T. "Tommy" Spinosa


David M. Moragas
Mandeville, Louisiana
 *and*
John Lynd, *pro hac vice*
Houston, Texas

COUNSEL FOR APPELLEE
PLAINTIFF—Hill International,
Inc.


* * * * * * *

BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.

McClendon, J. dissents in part and concurs in part and
assigns reasons.

**WELCH, J.**

In this suit on an open account, defendants appeal an amended judgment rendered after a one-day bench trial that awarded the plaintiff damages, interest, and attorney's fees. For the following reasons, we recall our rule to show cause order and maintain the appeals. We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

This lawsuit arises out of conflicts concerning the construction of the Perkins Rowe mixed-use development in Baton Rouge, Louisiana. On May 31, 2006, Perkins Rowe Associates, LLC ("PRA") contracted with EMJ Corporation ("EMJ") to perform certain work on the Perkins Rowe project ("the Project"). For various reasons, including alleged irregularities with costs associated with the work performed by EMJ, the contract between PRA and EMJ was terminated. Subsequently, EMJ sued PRA and Perkins Rowe Associates II, LLC ("PRAII") (collectively referred to as the "PRA entities").

To defend the EMJ lawsuit, Joseph T. Spinosa ("Mr. Spinosa")—the manager, a member, and an owner of the PRA entities—approached Hill International, Inc. ("Hill") around September 2008 to conduct an in-depth audit of the costs as recorded and billed by EMJ. On October 6, 2008, Hill executed its "[Standard Form of] Agreement for Claims and Consulting Services" (the "contract"), which contained the following choice-of-law provision:

> 15. GOVERNING LAW: DISPUTE RESOLUTION. This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of New Jersey. Any disputes arising out or relating to this Agreement shall be resolved by an arbitration proceeding held in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, such proceeding to be located in the State of New Jersey. In any such proceeding, the prevailing party shall be entitled to an award of costs and reasonable attorney's fees.

The contract identified JTS Realty Corporation ("JTS Realty Corp.") as the "Client." Hill sent the contract to Mr. Spinosa, who is also the corporate

2

representative and president of JTS Realty Corp., for execution. Prior to execution, PRA and PRAII were typed above Mr. Spinosa's signature line, which identified him as "Manager," with both PRA and PRAII identified as "Client"; however, the "Client" designation was not correspondingly adjusted in the body of the contract. Mr. Spinosa signed the contract, and Jerri Vasta with JTS Realty Services, LLC returned it to Hill via email on October 22, 2008.

Between November 2008 and October 2009, Hill provided professional services pursuant to the contract and incurred reimbursable fees and expenses. Hill billed "JTS Realty" on a monthly basis. Hill was paid $199,460.06 for its services provided under the contract, leaving a total of $408,587.35 in unpaid invoices. Hill suspended its services and made amicable demand for payment in the amount of $402,839.80. After receiving Hill's demand, Mr. Spinosa allegedly acknowledged the debt was due and owing; however, the amounts remained unpaid.

Hill filed suit against the PRA entities and JTS Realty Corp., seeking damages under Louisiana's Open Account Statute, La. R.S. 9:2781, for its expert consulting services in the amount of $408,587.35, plus attorney's fees, costs, and interest. Hill later amended its original petition, alleging that the PRA entities and JTS Realty Corp. were engaged in a single business enterprise or were alter egos of each other. Hill further pled breach of contract, *quantum meruit*, and promissory estoppel; requested attorney's fees; and sought declaratory judgment in its amended petition. Hill filed a second amended petition that named JTS Realty Services, LLC ("JTS Realty Servs."); JTS Management Company, LLC ("JTS Management"); and JTS Interests, LLC as additional defendants. Hill alleged these companies were also engaged in a single business enterprise and/or were alter egos along with the PRA entities and JTS Realty Corp.

Thereafter, Hill filed a third amended petition, removing JTS Interests, LLC as a defendant and naming Mr. Spinosa and the Spinosa Class Trust ("the

Trust")—represented by trustee Lawrence R. Spinosa—as defendants. Hill again alleged that all defendants were engaged in a single business enterprise and/or were alter egos of one another.

Ultimately, the trial court held a one-day bench trial on September 3, 2019. Thereafter, the trial court rendered judgment on October 13, 2019, awarding Hill $1,063,265.68 in actual damages against defendants, plus pre-judgment contractual interest; declaring that all defendants were solidarily liable under the doctrines of single business enterprise and/or alter ego; awarding Hill post-judgment interest as allowed by law; and awarding Hill reasonable attorney's fees and costs "in an amount to be hereafter determined." Following a hearing on Hill's motion to set the amount of the attorney's fees, the trial court issued a second judgment on August 17, 2020, awarding Hill $390,000.00 in attorney's fees and costs against all defendants.

Defendants now appeal. Lawrence R. Spinosa, in his capacity as trustee of the Trust, filed a motion with this court to substitute the successor trustee, Glen R. Jarrell, in his place as appellant in the instant appeal.[1] The PRA entities, JTS Realty Corp., JTS Management, JTS Realty Servs., and Mr. Spinosa (collectively referred to as "the Spinosa defendants") also filed an answer to the appeal.

### APPELLATE JURISDICTION

This court, *ex proprio motu*, issued an order on March 23, 2021, ordering the parties to show cause by briefs why the appeals should not be dismissed, noting defects in the October 13, 2019 and August 17, 2020 judgments, as well as defects in the motions for appeal filed by the appellants.[2] The parties timely filed their respective show cause briefs, all agreeing that this matter should be remanded to

---

[1] This court referred the motion to the panel to which the appeal is assigned. **Hill Int'l, Inc. v. JTS Realty Corp.**, 2021-0157 (La. App. 1st Cir. 4/22/21) (unpublished action).

[2] This court referred the motion to the panel to which the appeal is assigned. **Hill Int'l, Inc. v. JTS Realty Corp.**, 2021-0157 (La. App. 1st Cir. 5/6/21) (unpublished action).

the trial court to correct the deficiencies in the orders of appeal and the apparent non-final judgments.

Thereafter, we remanded this matter for the limited purpose of instructing the trial court to sign an amended final judgment(s) correcting the cited deficiencies. We further instructed the trial court to sign an amended order(s) of appeal specifying which party or parties appealed from which judgment(s). Finally, we ordered the trial court to supplement the record on appeal with the amended judgment(s) and order(s) of appeal no later than 45 days following issuance of our remand opinion. **Hill Int'l, Inc. v. JTS Realty Corp.**, 2021-0157 (La. App. 1st Cir. 12/30/21), 342 So.3d 322, 328.

Pursuant to the remand opinion, the Clerk of Court for the 19th Judicial District Court ("Clerk") supplemented the record on appeal with an amended judgment signed on February 14, 2022. The February 14, 2022 amended judgment, rendered in favor of Hill and against all defendants, awarded Hill $1,063,265.68 in actual damages, plus pre-judgment contractual interest that continued to accrue on Hill's unpaid invoices in the amount of $5,742.83 per month from September 1, 2019, until entry of the February 14, 2022 amended judgment; awarded Hill post-judgment interest as allowed by law; awarded Hill reasonable attorney's fees and costs of court in the amount of $390,000.00; and decreed that all defendants "are solidarily liable under the doctrines of single business enterprise and/or alter ego liability for payment of the said amounts." The February 14, 2022 amended judgment also stated that it is a final judgment that adjudicates all outstanding issues: "[A]ny and all claims of all parties not herein granted are dismissed with prejudice."

The Clerk further supplemented the record on appeal with an amended order of appeal signed on February 9, 2022, granting Lawrence R. Spinosa, in his capacity as trustee of the Trust, an appeal of the February 14, 2022 amended

judgment. The Clerk also supplemented the record on appeal with an amended order of appeal signed on February 9, 2022, granting the Spinosa defendants an appeal of the February 14, 2022 amended judgment.

Considering this, we find the February 14, 2022 amended judgment is a final judgment, and it cured the identified deficiencies in the original October 13, 2019 and August 17, 2020 judgments and in the October 20, 2020 and October 26, 2020 orders of appeal. The rule to show cause order is recalled, and the appeals are maintained.

## MOTION TO SUBSTITUTE APPELLANT

Lawrence R. Spinosa, in his capacity as trustee of the Trust, filed an unopposed motion with this court to substitute the successor trustee, Glen R. Jarrell, in his place as appellant in the instant appeal.[3] According to Lawrence R. Spinosa, "[b]ased upon the declining health of the Trustee, Lawrence Randall Spinosa, on August 16, 2020, an Act of Removal of the Trustee and Appointment of Successor Trustee, Glen R. Jarrell, was executed." Thereafter, "Glen R. Jarrell, successor trustee of the Trust, executed an Acceptance of Trust Following Removal of Original Trustee on August 26, 2020."

Given the settlors' authority to replace a trustee per the trust documents, the settlors' act of removal of Lawrence R. Spinosa as trustee and appointment of Glen R. Jarrell in his place, and Mr. Jarrell's acceptance of same, as well as the fact that this motion is unopposed, Lawrence R. Spinosa's Motion to Substitute is granted, and Mr. Jarrell is hereby substituted in Lawrence R. Spinosa's place as appellant in his capacity as trustee of the Trust.

## LAW AND DISCUSSION

The February 14, 2022 amended judgment awarded damages, interest, and

---

[3] This court referred the motion to the panel to which the appeal is assigned. **Hill Int'l, Inc. v. JTS Realty Corp.,** 2021-0157 (La. App. 1st Cir. 4/22/21) (unpublished action).

attorney's fees to Hill and further found that all defendants are "solidarily liable under the doctrines of single business enterprise and/or alter ego liability for payment of the said amounts." The trial court did not provide reasons for its finding. However, we note at the outset that, on appeal, there is no allegation that the trial court erred in finding the PRA entities liable for the amounts owed to Hill. Accordingly, the PRA entities' liability is not discussed in this opinion. We instead focus our attention on the liability of JTS Realty Corp., JTS Realty Servs., JTS Management, Mr. Spinosa, and the Trust.

### Contractual Liability

Although not explicitly assigned as error, the parties clearly disagree as to whether JTS Realty Corp. was a party to the contract. Therefore, it is necessary to determine whether JTS Realty Corp. is liable under the terms of the contract along with the PRA entities.

"Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law. **Fee v. S. Packaging, Inc.**, 2018-1364, 2018-1365 (La. App. 1st Cir. 5/24/19), 277 So.3d 787, 797. Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless the written expression of the common intention of the parties is ambiguous. **Id.** at 796-97. The determination of whether a contract is clear or ambiguous is a question of law. **Id.** at 797. A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, its terms are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed. **Id.**

The executed contract at issue identified JTS Realty Corp. as the "Client" in

7

the first paragraph and refers only to "Client" throughout the body of the contract. The end of the contract provides, "IN WITNESS WHEREOF, Client and Hill have executed this Agreement as of the date first written above." PRA and PRAII, with the designation as "Client," are typed underneath that sentence. Below that is Mr. Spinosa's signature as "Manager." Despite the designation of the PRA entities as "Client" at the end of the contract at the signature line, the only time "Client" is defined in the contract is at the beginning of the document, and that definition does not include the PRA entities. There is no dispute that the PRA entities are bound by the contract. However, the two separate client designations in the contract create ambiguity as to whether the parties intended to bind JTS Realty Corp. to the contract in addition to the PRA entities; thus, we may look to parol evidence to determine the intention of the parties.

Intent is an issue of fact that is to be inferred from all of the surrounding circumstances. **Martin Expl. Co. v. Amoco Prod. Co.,** 93-0349 (La. App. 1st Cir. 5/20/94), 637 So.2d 1202, 1205, writ denied, 94-2003 (La. 11/4/94), 644 So.2d 1048. During trial, Dennis Allen, Hill's corporate representative, testified that he prepared the contract identifying JTS Realty Corp. as the "Client." Mr. Allen emailed Mr. Spinosa on October 6, 2008, attaching a proposal letter, the contract, and a rate schedule, which he stated were in the file titled "JTS package." The proposal letter was addressed to Mr. Spinosa and JTS Realty Corp., and it outlined how Hill could "assist JTS Realty Corp," referenced "JTS" throughout the correspondence, and set forth Hill's proposed services including a Phase I scope of services. On October 22, 2008, Jerri Vasta of JTS Realty Servs. returned the signed contract to Hill and authorized Hill to proceed with the Phase I scope of services as outlined in its October 6, 2008 letter. The identification of JTS Realty Corp. as "Client" was not struck through on the signed contract. Mr. Allen testified that he assumed the PRA entities were additional clients, along with JTS

Realty Corp., when Mr. Spinosa listed the PRA entities above his signature line on the executed contract. Further, Hill invoiced "JTS Realty" for its work, and Mr. Allen testified that Mr. Spinosa never informed Hill that the wrong entity was billed. In fact, Mr. Allen stated that the first time Mr. Spinosa informed him that there was a "discrepancy" as to the entities involved was approximately three months after Hill instituted litigation.

Mr. Spinosa's initial testimony was that he executed the contract "in the name of Perkins Rowe" and informed Hill that JTS Realty Corp. was not the proper client by contacting Mr. Allen. Mr. Spinosa stated, "I recall executing an agreement that was inappropriately addressed[,] . . . making the change with [Mr. Allen's] knowledge and approval, and forwarding the document back." However, Mr. Spinosa later testified that if Hill was informed that its invoices were improperly addressed, such communication would appear in the record. Nothing of the sort appears in the record on appeal. Mr. Spinosa also contradicted his previous testimony regarding allegedly changing the contract to name the PRA entities as the "Client" by testifying that he does not know how the PRA entities came to be listed on the contract.

The trial court would be well within its discretion as the factfinder to disregard Mr. Spinosa's inconsistent testimony. We find the remaining evidence sufficiently demonstrates that the parties intended JTS Realty Corp. to be a party to the contract and that JTS Realty Corp. is contractually liable for the amounts owed under the contract along with the PRA entities. Consequently, it is unnecessary for us to determine whether JTS Realty Corp. was engaged in a single business enterprise in order to affirm liability as to JTS Realty Corp.

### Choice of Law

The Spinosa defendants and the Trust allege that the trial court erred in finding that the remaining JTS entities (JTS Management and JTS Realty Servs.),

Mr. Spinosa, and Lawrence R. Spinosa, in his capacity as trustee of the Trust, are solidarily liable for the debt under the single business enterprise and/or alter ego theories of liability. The Spinosa defendants and the Trust first assert that the trial court erred in applying Louisiana law to the issues despite the contract's choice-of-law provision declaring that it "shall be governed by and construed and interpreted in accordance with the laws of the State of New Jersey."[4] New Jersey law does not recognize the single business enterprise doctrine. See **Verni ex rel. Burstein v. Harry M. Stevens, Inc.**, 903 A.2d 475, 497 (N.J. App. Div. 2006). Therefore, the Spinosa defendants and the Trust maintain that they cannot be held liable under that theory of liability because New Jersey law governs their claims per the contract. The determination as to which state's law shall be applied to an issue is a question of law, which this court reviews *de novo*. **Safeway Ins. Co. - Mississippi v. Nash**, 2020-1296 (La. App. 1st Cir. 6/4/21), 327 So.3d 1048, 1050.

A contract between the parties is the law between them. See La. Civ. Code art. 1983. It is well-established that where the parties stipulate the state law governing the contract, Louisiana conflict-of-laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justifying the refusal to honor the contract as written. See La. Civ. Code art. 3540; **O'Bannon v. Moriah Techs., Inc.**, 2017-0728 (La. App. 1st Cir. 3/29/18), 248 So.3d 392, 404-05. The parties to

---

[4] We note that (1) JTS Realty Servs., JTS Management, and Mr. Spinosa and (2) the Trust sought summary judgment in their favor on the basis that New Jersey law governs the contract and all issues pertaining thereto, and since New Jersey law does not recognize the single business enterprise theory of liability, Hill's claims against them should be dismissed with prejudice. The trial court denied both motions in a January 6, 2017 order. The Trust filed a writ application with this court. This court declined to exercise its supervisory jurisdiction and denied the writ application. See **Hill Int'l, Inc. v. JTS Realty Corp.**, 2017-0034 (La. App. 1st Cir. 4/18/17), 2017 WL 1386389 (unpublished). The Spinosa defendants and the Trust have implicitly sought review of the district court's 2017 judgment on their motions for summary judgment in the instant appeal. When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory or partial judgments prejudicial to it or that involve the same or related issues, in addition to the review of the final judgment dismissing all of its claims with prejudice. **Bannister Properties, Inc. v. State**, 2018-0030, 2018-0031, 2018-0032, 2018-0033 (La. App. 1st Cir. 11/2/18), 265 So.3d 778, 784 n.6, writ denied, 2019-0025 (La. 3/6/19), 266 So.3d 902.

the contract—Hill, JTS Realty Corp., and the PRA entities—chose New Jersey law to govern their claims.

However, we decline to apply the terms of the contract to claims against non-signatories to the contract. See **NorAm Drilling Co. v. E & PCo Int'l, LLC**, 48,591 (La. App. 2d Cir. 12/11/13), 131 So.3d 926. In **NorAm**, the plaintiff filed suit against two defendants ("D1" and "D2") alleging damages resulting from a purported breach of contract to drill a horizontal methane well in Louisiana. **Id.** at 927. The drilling contract was executed between the plaintiff and D1 and contained a choice-of-law provision, which provided "the [c]ontract is to be construed, governed, interpreted, enforced and litigated, and the relations between the parties determined in accordance with the laws of the State of Texas." **Id.** Although D2 was not a party to and did not sign the contract at issue in the lawsuit, the plaintiff alleged that D2 was obligated for D1's debts under the single business enterprise theory under Louisiana law. **Id.** D2 subsequently filed a motion for summary judgment. In its motion, D2 argued that it could not be held liable because (1) it was not a party to the drilling contract; and (2) Texas law, which did not recognize liability on grounds of single business enterprise, applied to the lawsuit. **Id.** at 927-28.

The Second Circuit engaged in a choice-of-law analysis, starting with the direct language of Article 3540 of the Louisiana Civil Code. Noting that the contract at issue contained a Texas choice-of-law provision, the court acknowledged the established Louisiana law principle that "where parties to a contract stipulate the specific state law that will govern the contract, the choice-of-law provision must be given effect unless there is statutory or jurisprudential law to the contrary" and concluded that Texas law must govern any claim arising under the drilling contract. **Id.** at 929. The **NorAm** court further recognized "the legal conundrum of applying the contractual terms of the drilling contract to a claim

11

against [D2,] who is not a party to the contract." **Id.** Rather than apply the contractual choice of law to a non-party to the contract, the court used La. Civ. Code art. 3537 to determine which state's law would apply in the absence of a choice of law. **Id.** Article 3537 provides:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[5]

The **NorAm** court ultimately concluded that the Article 3537 factors also supported the application of Texas law because the parties were all formed under the laws of and domiciled in Texas, the records of all the parties were also maintained there, and the parties' operations all occurred in Texas. **Id.** at 929. Further, the drilling contract was drafted, negotiated, and signed in Texas with the expectation that any litigation arising under the drilling contract would be governed by the laws of Texas. **Id.** at 930. After further concluding that, pursuant to La. Civ. Code art. 3515, the law of the state of Texas would be most seriously impaired if not applied, the **NorAm** court held that Texas law applied to the lawsuit. **Id.**

We find **NorAm** instructive. Like in **NorAm**, some of the defendants in this case are signatories to the contract while others are not. New Jersey law applies to the signatories of the contract, so New Jersey law governs any claim arising under the contract as to the signatories thereto. The issues presented on appeal, however,

---

[5] The significance of each of these factors varies according to the contract at issue. Dian Tooley-Knoblett and David Gruning, 24 LA. CIV. L. TREATISE, Sales § 1:15 (2021).

do not include liability under the contract. Instead, appellants claim the non-signatory defendants—JTS Management, JTS Realty Servs., Mr. Spinosa, and the Trust—are not solidarily liable for the debt to Hill. We find, just as the **NorAm** court did, that the law governing the issues as they relate to the non-signatories to the contract must be determined pursuant to La. Civ. Code art. 3537.

In this case, the contract concerns forensic cost accounting services pertaining to alleged costs, damages as a result of delay, and deficiencies arising out of a dispute at the Perkins Rowe shopping center in Baton Rouge, Louisiana. The underlying EMJ litigation also pertains to a construction project located in Baton Rouge, Louisiana. The evidence introduced at trial established that Mr. Spinosa resides in Louisiana, and the offices and operations of the PRA entities, as well as the offices of JTS Management and JTS Realty Servs., are domiciled in Louisiana, have registered agents in Louisiana, and have managers/officers in Louisiana. Although Hill is a Delaware corporation with its corporate headquarters in New Jersey, it executed the contract and delivered it to Mr. Spinosa (on behalf of the PRA entities and JTS Realty Corp.) in Louisiana, where Mr. Spinosa resides. Further, Louisiana has a distinct interest in determining the fundamental issues of its own entities' corporate existence and/or structure. See **Patin v. Thoroughbred Power Boats Inc.**, 294 F.3d 640, 646-47 (5th Cir. 2002), citing **Quickick, Inc. v. Quickick Int'l**, 304 So.2d 402, 406 (La. App. 1st Cir.), writ denied, 305 So.2d 123 (La. 1974) ("At least one Louisiana intermediate appellate court has concluded that the law of the state of incorporation applies in determining whether it is appropriate to pierce the corporate veil."); see also **Energy Coal v. CITGO Petroleum Corp.**, 836 F.3d 457, 462 (5th Cir. 2016) ("Louisiana courts look to the state of incorporation not just when deciding issues involving piercing, which as noted above is a close relative of the single business enterprise theory, but also when deciding more general questions of corporate

structure."). For these reasons, we find Louisiana law would be most seriously impaired if not applied, and thus, the trial court did not err in applying Louisiana law to Hill's claims against the non-signatory defendants.

*The Single Business Enterprise and Alter Ego Theories of Liability*

The trial court's ruling did not state which defendants it found liable under the single business enterprise theory of liability versus the alter ego theory of liability. Although the theories have some similarities, an important distinction must be made between the two.

A limited liability company ("LLC") is a juridical person separate and apart from its members. See **Ogea v. Merritt**, 2013-1085 (La. 12/10/13), 130 So.3d 888, 894-95, citing La. Civ. Code art. 24. Thus, members of an LLC are generally not liable for a debt, obligation, or liability of the LLC. See La. R.S. 12:1320(B). In narrowly defined circumstances, however, individual members of an LLC have been subjected to personal liability for obligations for which the LLC would otherwise be solely liable. **Fausse Riviere, L.L.C. v. Snyder**, 2016-0633 (La. App. 1st Cir. 2/15/17), 211 So.3d 1188, 1192. When individual members of an LLC mismanage the entity or otherwise thwart the public policies justifying treating the entity as a separate juridical person, the court may "pierce the corporate veil" to hold the LLC's individual members liable for its debts. **Id.** The court may pierce the corporate veil under two exceptional circumstances. The first is where the shareholders, acting through the corporation, commit fraud or deceit on a third party such that justice demands the corporate veil be pierced to allow the third party to recover from the shareholders personally. See **Id.** at 1193. In the second instance, which Hill asserts herein, the shareholders disregard the corporate formalities to such an extent that the shareholders and the corporation become indistinguishable, *i.e.*, the corporation was operated as the "alter ego" of the shareholder. **Id.**, citing **Riggins v. Dixie Shoring Co., Inc.**, 590 So.2d 1164, 1168

14

(La. 1991).

The single business enterprise theory of liability is distinguishable from the alter ego theory in several ways. The most important distinction is who may be held liable under each theory. As opposed to alter ego doctrine, which "pierces the corporate veil" to reach the members of an LLC, the single business enterprise doctrine is a theory for imposing liability on *two or more business entities* when they act as one. **Brown v. ANA Insurance Group**, 2007-2116 (La. 10/14/08), 994 So.2d 1265, 1266 n.2, citing **Green v. Champion Ins. Co.**, 577 So.2d 249, 257 (La. App. 1st Cir.), writ denied, 580 So.2d 668 (La. 1991). Under the single business enterprise theory, the legal fiction of a distinct corporate entity is disregarded when a corporation is so organized and controlled as to make it merely an instrumentality or adjunct of another corporation.[6] **Green**, 577 So.2d at 257. When a group of entities constitutes a single business enterprise, the assets of each of the affiliated corporations are pooled together to satisfy the claims of creditors. **Brown v. Auto. Cas. Ins. Co.**, 93-2169 (La. App. 1st Cir. 10/7/94), 644 So.2d 723, 727, writ denied, 94-2748 (La. 1/6/95), 648 So.2d 932, citing **Green**, 577 So.2d at 259. The single business enterprise doctrine permits multiple companies to be treated as a single entity—but still an entity separate from its human owners—as if all of the different companies within an affiliated group had been

_____

[6] Since **Green**, the single business enterprise doctrine has been acknowledged by other appellate courts of this state as well. See. e.g., **GBB Properties Two, LLC v. Stirling Properties, Inc.**, 2017-352 (La. App. 3d Cir. 10/25/17), 230 So.3d 225, writ denied, 2017-1931 (La. 1/29/18), 233 So.3d 606; **Lee v. Clinical Rsch. Ctr. of Fla., L.C.**, 2004-0428 (La. App. 4th Cir. 11/17/04), 889 So.2d 317, writ denied, 2004-3002 (La. 2/18/05), 896 So.2d 33; **Khoobehi Properties, LLC v. Baronne Dev. No. 2, L.L.C.**, 2016-506 (La. App. 5th Cir. 3/29/17), 216 So.3d 287, 298, writ denied, 2017-0893 (La. 9/29/17), 227 So.3d 288. As Justice Crichton noted, "[It is] concerning [the Louisiana Supreme] Court has never considered the propriety of [the] application [of the single business enterprise doctrine] despite its conceptualization by an appellate court 30 years ago. . . . [T]he authority of [the Louisiana Supreme] Court on the nature of business entities is wanting, and more guidance is needed in this area of the law." **St. Romain v. Cherokee Ins. Co.**, 2021-01412 (La. 11/23/21), 328 So.3d 72, 73 (Crichton, J., assigning reasons to grant and docket the writ application, though denied by the majority of justices). In light of recent legislative history, namely Louisiana House Bill 313 of the 2020 Regular Session (vetoed by Gov. Edwards), guidance is needed on this issue. However, as the current case law stands, we are bound by **Green**.

15

organized as just one, all-encompassing corporation or LLC. Glenn G. Morris and Wendell H. Holmes, 8 LA. CIV. L. TREATISE, Business Organizations § 32:15 (2022). "In effect, [single business enterprise] piercing rips through all of the separate-company barriers within an affiliated group, moving in all directions . . . but then stops when it reaches the final ceiling within the group, the one that separates the group as a whole from its human owners." **Id.** While the alter ego theory provides a basis to impose liability on the *individual members* of a business entity, single business enterprise provides a basis to impose liability on any *affiliated business entities* operating as one.

The applicability of either theory is a factual determination. **Grayson v. R.B. Ammon & Associates, Inc.**, 99-2597 (La. App. 1st Cir. 11/3/00), 778 So.2d 1, 15, writs denied, 2000-3270, 2000-3311 (La. 1/26/01), 782 So.2d 1026, 1027; **Holly & Smith Architects, Inc. v. St. Helena Congregate Facility**, 2003-0481 (La. App. 1st Cir. 2/23/04), 872 So.2d 1147, 1156. Based on the legal distinction as to who is liable under the single business enterprise and alter ego theories of liability, we are presented with two separate questions of fact: (1) whether JTS Management and JTS Realty Servs. were operating in a single business enterprise with any of the contractually bound parties (the PRA entities and JTS Realty Corp.); and (2) whether JTS Realty Corp., JTS Realty Servs., JTS Management (collectively referred to as "the JTS entities"), and/or the PRA entities operated as the alter ego of their member(s), namely Mr. Spinosa and the Trust, such that the corporate veil should be pierced.

The plaintiff's burden of proof under both the single business enterprise and alter ego theories of liability is clear and convincing evidence.[7] **Grayson**, 778

---

[7] To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. **In re Fogg**, 2019-0719 (La. App. 1st Cir. 2/21/20), 298 So.3d 291, 294, writ denied, 2020-00819 (La. 10/14/20), 302 So.3d 1124.

So.2d at 14; **Holly & Smith Architects, Inc.,** 872 So.2d 1156. Further, on review, the appellate court may not reverse the factfinder's factual determinations unless the record does not provide a reasonable factual basis for the finding and the finding is manifestly or clearly wrong. **Stobart v. State, Department of Transportation and Development,** 617 So.2d 880, 882 (La. 1993).

### *Liability of JTS Management and JTS Realty Servs.*

Louisiana courts consider a non-exhaustive list of 18 factors to evaluate whether an entity is part of a single business enterprise with another entity. Those factors include:

1. Corporations with identity or substantial identity of ownership, *i.e.,* ownership of sufficient stock to give actual working control;
2. Common directors or officers;
3. Unified administrative control of corporations whose business functions are similar or supplementary;
4. Directors and officers of one corporation act independently in the interest of that corporation;
5. Corporation financing another corporation;
6. Inadequate capitalization;
7. Corporation causing the incorporation of another affiliated corporation;
8. Corporation paying the salaries and other expenses or losses of another corporation;
9. Receiving no business other than that given to it by its affiliated corporations;
10. Corporation using the property of another corporation as its own;
11. Noncompliance with corporate formalities;
12. Common employees;
13. Services rendered by the employees of one corporation on behalf of another corporation;
14. Common offices;
15. Centralized accounting;
16. Undocumented transfers of funds between corporations;
17. Unclear allocation of profits and losses between corporations; and
18. Excessive fragmentation of a single enterprise into separate corporations.

**Green,** 577 So.2d at 257-58. This list is illustrative, and no one factor is dispositive of the issue. **Grayson,** 778 So.2d at 15, <u>citing</u> **Green,** 577 So.2d at 258. Rather, "the totality of the circumstances" should be considered in evaluating the existence of a single business enterprise. **Holly & Smith Architects, Inc.,** 872

17

So.2d at 1156. Each defendant should be evaluated individually. See **Lee v. Clinical Research Ctr. of Fla., L.C.**, 2004-0428 (La. App. 4th Cir. 11/17/04), 889 So.2d 317, 323, writ denied, 2004-3002 (La. 2/18/05), 896 So.2d 33.

After comparing the evidence with the facts set out in **Green**, we conclude the record contains ample evidence to support the trial court's finding that JTS Management and JTS Realty Servs. were engaged in a single business enterprise with the contractually bound PRA entities. These entities have substantial identity of ownership, as Mr. Spinosa and/or the Trust is a member in each entity. Mr. Spinosa is also the manager of each of the defendant entities. JTS Management and JTS Realty Servs. share an office and a fax machine with the PRA entities, and they all have the same in-house accountant. Mr. Spinosa was identified as the corporate representative for all of the defendant entities. During his Article 1442 deposition, Mr. Spinosa admitted that his businesses have "shared" or "borrowed" employees. Mr. Spinosa also admitted that PRA had problems with capitalization during the Project. Transaction reports for the PRA entities show numerous monetary transfers between the defendant entities, and the evidence reflects liabilities in the millions to JTS Management and JTS Realty Servs. from the PRA entities. Defendants did not offer any evidence of promissory notes, IOUs, loan agreements, or any other such documents that would legitimize these transfers and liabilities between the entities.

Additionally, all defendant entities are in the real estate business, whether it be construction, development, or management. It also appears the defendant entities were operating interchangeably. For example, PRA's operating agreement calls for it to enter into a development and management agreement with JTS Management or its designee. The executed management agreement admitted into evidence, however, is between PRA and JTS Realty Servs., not JTS Management, and no evidence was presented to show that JTS Management officially designated

18

JTS Realty Servs. to fill that role. Various certificates of occupancy issued to tenants of Perkins Rowe list several different owners, including "JTS," "JTS Interests," and "JTS Reality." Mr. Spinosa, in his capacity as manager and registered agent of all of the defendant entities, also corresponded with the Louisiana Secretary of State regarding the PRA entities and the JTS entities on letterhead bearing a "JTS Interests" logo. Further, all communications and discussions concerning the contract and the services provided by Hill were between a representative of Hill and a representative from a JTS entity. Most notably, the executed contract was returned to Hill via email from an employee of JTS Realty Servs., and Mr. Spinosa's own email signature line on correspondence related to the Project identified him as CEO of JTS Realty Servs. Mr. Allen testified at trial that Mr. Spinosa held himself out as "JTS." In light of this evidence, we find no error in the trial court's factual finding that JTS Management and JTS Realty Servs. were engaged in a single business enterprise with the contractually bound PRA entities.

As Mr. Spinosa is an individual, not a business entity, single business enterprise is inapplicable to him. See **Nussli US, LLC v. Nola Motorsports Host Comm., Inc.**, No. 15-2372, 2016 WL 4063823, at *18 (E.D. La. 7/29/16) (holding single business enterprise may not be applied to an individual). Similarly, the Trust is not a business entity but rather a "relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another." La. R.S. 9:1731. A trust is unlike a corporation because a corporation is a juridical entity separate from its officers and stockholders. See Edward E. Chase, Jr., 11 LA. CIV. L. TREATISE, Trusts § 1:2 (2022); see also **Ogea**, 130 So.3d at 894, citing La. Civ. Code art. 24 (holding the same is true of an LLC). Thus, we find single business enterprise is also inapplicable to the Trust. This does not necessarily preclude a finding, however, that Mr. Spinosa and/or the Trust are

19

solidarily liable under the alter ego theory of liability if grounds for piercing the corporate veil exist.

### Piercing the Corporate Veil of JTS Realty Servs. and/or PRA entities

When a party seeks to pierce the corporate veil, the totality of the circumstances is determinative. **Fausse Riviere, L.L.C.,** 211 So.3d at 1193, citing **Riggins,** 590 So.2d at 1169. Some of the factors courts consider when determining whether to apply the alter ego doctrine include, but are not limited to, (1) commingling of corporate or shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder and director meetings. **Fausse Riviere, L.L.C.,** 211 So.3d at 1193. The fact that a person is the managing member of an LLC and/or has a significant ownership interest therein does not in itself make that person liable for its debts. **Charming Charlie, Inc. v. Perkins Rowe Assocs., L.L.C.,** 2011-2254 (La. App. 1st Cir. 7/10/12), 97 So.3d 595, 599, citing La. R.S. 12:1320(B).

Under the alter ego theory of liability, a finding that technical formalities were not followed is not enough; there must be something else, "some misuse of the corporate privilege or other justification for limiting [the recognition of a separate corporate existence] under the facts of a particular situation." **Prasad v. Bullard,** 2010-291 (La. App. 5th Cir. 10/12/10), 51 So.3d 35, 41. "[W]here fraud or deceit is absent, other circumstances must be so strong as to clearly indicate that the corporation and shareholder operated as one." **Harris v. Best of Am. Inc.,** 466 So.2d 1309, 1315 (La. App. 1st Cir.), writ denied, 470 So.2d 121 (La. 1985). "In the absence of particular allegations of shareholder fraud, a plaintiff will bear a heavy burden of proving that a shareholder disregarded corporate formalities to the extent that the shareholder and the corporation had become indistinguishable."

20

**New Orleans Jazz & Heritage Found., Inc. v. Kirksey**, 2009-1433 (La. App. 4th Cir. 5/26/10), 40 So.3d 394, 407, writ denied, 2010-1475 (La. 10/1/10), 45 So.3d 1100.

In applying the principle of corporate immunity, the members have the initial burden of showing the corporate existence. The burden then shifts to the plaintiff to show exceptional circumstances, which must exist in order for the corporate veil to be pierced and individual shareholders or members held liable for a corporate debt. **McDonough Marine Serv., a Div. of Marmac Corp. v. Doucet**, 95-2087 (La. App. 1st Cir. 6/28/96), 694 So.2d 305, 309. Depending upon the various competing policies and interests involved, the same factual scenario may result in recognition of a separate corporate identity for some purposes, *i.e.*, insulation of shareholders from liability and a disallowance of the separate corporate entity privilege for others. **Glazer v. Comm'n on Ethics for Pub. Emps.**, 431 So.2d 752, 758 (La. 1983), abrogated on other grounds as noted in **Louisiana Bd. of Ethics in re Great S. Dredging, Inc.**, 2015-0870 (La. App. 1st Cir. 5/27/16), 195 So.3d 631, 638 n.2, writ denied, 2016-1208 (La. 10/17/16), 207 So.3d 1063.

The evidence is clear that the PRA entities and JTS Realty Servs. formally exist under the laws of Louisiana. The burden then shifted to Hill to show that exceptional circumstances exist to support piercing the corporate veil to hold Mr. Spinosa liable as a shareholder. There is no evidence that Mr. Spinosa failed to maintain separate bank accounts or bookkeeping records for JTS Realty Servs. or the PRA entities, or otherwise failed to follow statutory formalities for the formation of JTS Realty Servs. or the PRA entities or the conduct of their affairs. A large majority of Mr. Spinosa's responses during his personal deposition and the La. Code Civ. P. art. 1442 deposition of the JTS entities and PRA entities, for which he was designated the corporate representative, were that he did not recall

the answer; he would "defer to the documents" presented during the depositions; he would "let the document speak to itself"; or he would "defer to the financial statements." Accordingly, the trial court was forced to largely disregard Mr. Spinosa's depositions and consult the documentary evidence and Mr. Allen's testimony in making its factual determination as to whether any of the defendant entities are merely the alter ego of Mr. Spinosa.

The exhibits admitted into evidence at trial are replete with examples of commingling of corporate and shareholder funds. The exhibits document a large number (in both quantity and value) of debits to the PRA entities from "JT Spinosa." In addition to the numerous "JT Spinosa" debits, the PRA and PRAII transaction reports include "interest" debits and credits with the designation "JT Spinosa"; wires in and out listed as debits and credits with the notation "JT Spinosa"; debits for legal fees referencing payments to law firms under the heading "JTS Joseph T Spinosa" and further referencing two legal matters in which Mr. Spinosa was named as a defendant; and at least one credit described as "2009 Distrib JTs" under the heading "JTS Joseph T. Spinosa." Defendants did not offer any evidence of promissory notes, IOUs, loan agreements, or any other such documents that would legitimize these transfers. In a rare responsive answer during his deposition, Mr. Spinosa admitted that he personally loaned money to the Project, namely PRA, and has not been paid in full; however, there is no evidence of the terms of any such loan.

Further, even in cases involving consensual creditors where veil piercing is unusual, courts frequently decline to protect a shareholder against personal liability where a single shareholder controls a number of different corporations and moves assets back and forth between the various corporations. See Glenn G. Morris and Wendell H. Holmes, 8 LA. CIV. L. TREATISE, Business Organizations § 32:6 (2022) (describing piercing the corporate veil as a sort of *"res ispa loquitur"* remedy for

corporate creditors in such an instance). As discussed above, the evidence shows numerous monetary transfers between the defendant entities and reflects liabilities in the millions between those entities. Mr. Spinosa is the only shareholder or one of only a few shareholders in nearly all of these entities. Considering the evidence of unexplained commingling of funds and Mr. Spinosa's overtly evasive deposition testimony, we cannot say the trial court's decision to pierce the corporate veil of the PRA entities in order to also hold Mr. Spinosa personally liable for the debt owed to Hill was manifestly erroneous.

### *Piercing the Corporate Veil of JTS Management*

The Trust has a 100% ownership interest in JTS Management. By virtue of this ownership interest, Hill seeks to pierce the corporate veil of JTS Management to hold the Trust liable for JTS Management's debts on the basis that JTS Management is the alter ego of the Trust.

Whether the alter ego doctrine may be applied to a trust as the sole member of an LLC, as opposed to an individual or other business entity, is a *res nova* issue in Louisiana. Even assuming the alter ego doctrine could be applied to a trust under Louisiana law, no facts are alleged in the petition, nor was any evidence presented at trial, that would support the existence of exceptional circumstances that justify the application of that doctrine here. See **Crutcher-Tufts Res., Inc. v. Tufts**, 2009-1572 (La. App. 4th Cir. 4/28/10), 38 So.3d 987, 990. Hill did not present evidence that satisfies any factors supporting the application of the alter ego doctrine to the Trust. The record is also devoid of allegations or evidence related to any specific actions of Lawrence R. Spinosa, either individually or in his representative capacity, that would justify piercing the corporate veil.[8] In fact, Mr. Allen testified that he was not even aware of the Trust until 2013, years after the

---

[8] We look to Lawrence R. Spinosa's actions since a trust can only act through its trustee(s). See **Crutcher-Tufts**, 38 So.3d at 990, citing La. R.S. 9:1781 and La. R.S. 9:2091.

23

parties entered into the contract and years after litigation was instituted. Accordingly, we find manifest error in the trial court's decision to pierce the corporate veil to hold the trustee of the Trust, in his representative capacity, solidarily liable for any and all debts owed to Hill per the trial court's February 14, 2022 amended judgment, including but not limited to actual damages, interest, attorney's fees, and costs.

## ANSWER TO THE APPEAL

The Spinosa defendants filed an answer to the appeal "out of an abundance of caution" related to the appearance of "some discrepancy as to Spinosa and the Non-Trust Entities['] procedural status before the Court in this matter." The "discrepancy" seems to stem from issues recognized by the rule to show cause order and subsequently rectified on remand. Accordingly, we deny the answer to the appeal filed by the Spinosa defendants.

## DECREE

For the above and foregoing reasons, we recall this court's March 23, 2021 rule to show cause order and maintain the appeals.

The motion to substitute the successor trustee, Glen R. Jarrell, in the place of trustee Lawrence R. Spinosa as appellant in the instant appeal that was filed by defendant/appellant Lawrence R. Spinosa, in his capacity as trustee of the Spinosa Class Trust, is GRANTED.

We REVERSE the portion of the trial court's February 14, 2022 amended judgment that finds Lawrence R. Spinosa, as trustee of the Spinosa Class Trust, "solidarily liable under the doctrines of single business enterprise and/or alter ego liability for payment of the said amounts." We AFFIRM the trial court's February 14, 2022 amended judgment in all other respects. All costs of this appeal are to be equally shared by Plaintiff, Hill International, Inc., and Defendants, JTS Realty Corporation; JTS Realty Services, LLC; JTS Management Company, LLC; Perkins

Rowe Associates, LLC; Perkins Rowe Associates II, LLC; and Joseph T. Spinosa.

The answer to the appeal filed by defendants/appellants Perkins Rowe Associates, LLC; Perkins Rowe Associates II, LLC; JTS Realty Corporation; JTS Realty Services, LLC; JTS Management Company, LLC; and Joseph T. Spinosa is DENIED.

**RULE TO SHOW CAUSE ORDER RECALLED; APPEALS MAINTAINED; MOTION TO SUBSTITUTE APPELLANT GRANTED; AMENDED JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; ANSWER TO APPEAL DENIED.**



STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0157

HILL INTERNATIONAL, INC.

VERSUS

JTS REALTY CORPORATION, PERKINS ROWE ASSOCIATES, L.L.C., AND
PERKINS ROWE ASSOCIATES II, L.L.C.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., dissents in part and concurs in part.**

I disagree with the majority's conclusion that JTS Realty Corp. was bound under

the terms of the contract. The signature section of the contract provides as follows:

> IN WITNESS WHEREOF, Client and Hill have executed
> this Agreement as of the date first written above.
>
> [CLIENT] PERKINS ROWE ASSOCIATES, LLC
> ("Client")PERKINS ROWE ASSOCIATES.II,LLC
>
> By:_____
> Name: Joseph T. Spinosa
> Title: Manager
>
> HILL INTERNATIONAL, INC.
> ("Hill")
>
> By:_____
> Name: Dennis L. Allen
> Title: Senior Vice President

Although the parties may have intended for JTS Realty Corp. to be a client to the

contract, and although JTS Realty Corp. is identified as a client in the body of the

contract, no one signed the contract on behalf of JTS Realty Corp. Mr. Spinosa signed

the contract solely as the manager of Perkins Rowe Associates, LLC and Perkins Rowe

Associates II, LLC. As such, JTS Realty Corp. cannot be bound by the contract as a

contracting party. The parties' intent as to the identity of JTS Realty Corp. as a client is

not determinative of the issue presented. Accordingly, I find that the majority erred in

determining that JTS Realty Corp. was contractually liable for the amounts owed under

the contract.

Further, with regard to the Spinosa Class Trust, Lawrence Spinosa, as trustee, was not a named defendant in this matter. Rather, the third amended petition added the Spinosa Class Trust as a defendant. A judgment may not be rendered against a party who is not named as a defendant. **Dennison v. Liberty Mut. Ins. Co.**, 94-0026 (La.App. 1 Cir. 11/10/94), 645 So.2d 1227, 1233. Accordingly, any judgment against Lawrence Spinosa is absolutely void. See **Hebert v. Hebert**, 96-2155 (La.App. 1 Cir. 9/19/97), 700 So.2d 958, 959. Further, in this matter, the trial court neither dismissed all claims against the trust nor rendered judgment against the trust. Nevertheless, finding no authority for applying the piercing the corporate veil/alter ego theory to a trust, I concur with the majority's conclusion that the trial court erred in holding the trustee solidarily liable.

Accordingly, I respectfully dissent in part and concur in part.

2